[S.F. No. 23698. Aug. 1, 1978.]

STANLEY OFSEVIT, Plaintiff and Respondent, v.
TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY
AND COLLEGES et al., Defendants and Appellants.

COUNSEL

Evelle J. Younger, Attorney General, and Stephen J. Egan, Deputy Attorney General, for Defendants and Appellants.

Stewart Weinberg and Van Bourg, Allen, Weinberg & Roger for Plaintiff and Respondent.

OPINION

**TOBRINER, J.**—This case presents two issues: Whether defendant trustees improperly denied plaintiff reappointment to his post as lecturer at a state university; and, if so, the nature of the remedy which will compensate plaintiff for his wrongful termination. The trial court found, inter alia, that in refusing to reappoint plaintiff, the trustees denied plaintiff the benefit of university rules and regulations and violated plaintiff's right to the exercise of his First Amendment rights. Holding that plaintiff had improperly been denied reappointment, the court ordered plaintiff reinstated to his teaching position and awarded him damages in the amount of lost benefits and net loss of pay from the time of the improper denial of reappointment to the date of reinstatement.

On appeal, defendant trustees challenge both the trial court's findings and the court's order as to reinstatement and damages. As we shall explain, however, we have concluded that the trial court's judgment was proper and should be affirmed.

In September 1967 plaintiff Stanley Ofsevit was appointed lecturer in the graduate department of social work education at San Francisco State University[1] for the academic year 1967-1968. In February 1968 plaintiff's

---

[1]Plaintiff was appointed to a position at San Francisco State College; since 1972, however, the college has been known as San Francisco State University, and this opinion will refer to it as such. (See former Ed. Code, §§ 23601, 23604.5, now §§ 89001, 89033.)

one-year contract was renewed for the academic year 1968-1969. In November 1968 plaintiff was reappointed for the academic year 1969-1970 "based on the salary rank of Associate Professor, Class I, Step 3."

While he was an employee of the university, plaintiff was a member of Local 1352 of the American Federation of Teachers, AFL-CIO, and, by his own account, actively participated in that organization's activities. The members of plaintiff's department were apparently deeply divided over the propriety of union representation in the university setting. In April 1969 a special committee of faculty members studying the department of social work education reported that the "breakdown of the usual interpersonal stability and communication" within the department was so acute that continuance of the entire graduate training program was in jeopardy. Subsequently the department director was not reappointed, and in November 1969 Acting Dean Einhorn of the school of behavioral and social sciences informed plaintiff that his "present assignment at San Francisco State [University would] end with the close of the Spring, 1970 semester."

The university later determined to continue the graduate program despite the program's defects, and a new director was appointed. In March 1970, with the concurrence of the new director, the department's hiring, retention and tenure committee recommended that plaintiff be reappointed. On April 7, 1970, however, the acting dean recommended to the vice president of the university that plaintiff not be retained. In May 1970 the hiring committee reaffirmed its recommendation and protested the fact that the acting dean had overridden its recommendation. The vice president of the university did not reappoint plaintiff for 1970-1971.

Pursuant to the "Interim Grievance and Disciplinary Action Procedures" in effect at the time[2] plaintiff filed a timely grievance protesting his nonreemployment. Discussions and conciliation efforts followed, but as a result of circumstances not attributable to plaintiff, a formal hearing did not take place until January 17, 1972. In February the grievance committee rendered a decision in favor of plaintiff, and "respectfully and unanimously recommend[ed] that Mr. Ofsevit be reappointed by [the university] immediately." The committee concluded that no evidence

---

[2]On April 17, 1970, the president of San Francisco State University had approved and adopted the "Interim Procedures" for university use. The validity of the procedures' adoption is not in question. (See former Ed. Code, §§ 23604-23605, now §§ 89030-89031, 89035; Cal. Admin. Code, tit. 5, §§ 42701-42702.)

supported the administration's decision to deny reappointment to plaintiff.[3]

On March 14, 1972, President Hayakawa rejected the grievance committee's results, indicating that, in his opinion, plaintiff's "activities and, hence, his possible contribution to polarization within the department . . . was an element which lessened his overall value to the department." President Hayakawa concluded that "there is no inherent reemployment right prior to tenured status," and that the "only right that inheres in the employment situation of a probationary faculty member is that of insuring that he has been evaluated without bias or capriciousness."

Plaintiff then appealed to Glenn S. Dumke, Chancellor of the California State University and Colleges.[4] The chancellor advised him that the Interim Grievance Procedures would govern review of his case, except that under regulations adopted by the board of trustees on September 23, 1970, the decision of the chancellor's review panel would be advisory, rather than "binding on all parties."[5]

On June 12, 1972, the chancellor's review committee considered the evidence in plaintiff's case and advised the chancellor of its unanimous recommendation in support of plaintiff. The committee noted that plaintiff had suffered "professional damage" which reappointment could

[3]The administration had attempted to justify its decision by claiming that plaintiff's teaching was incompetent; that his professional preparation was inadequate; that the administration would be faced with a premature tenure decision if plaintiff were reappointed; that the hiring committee's reappointment recommendation was ambivalent; that plaintiff's department was bitterly divided; and that the department needed a "different faculty mix." The hearing committee found, however, that plaintiff's competence as a teacher "had been demonstrated beyond question"; that plaintiff's academic preparation was "in no way inferior to that of other faculty who ha[d] been hired by the Department"; that the consideration of tenure as a factor in the question of plaintiff's reappointment was "inappropriate"; that the hiring committee and the department director were not ambivalent in their strong recommendation in support of plaintiff; that any department divisiveness predated plaintiff; and that plaintiff "in no specific way . . . contributed to the problems of the Department."

[4]Section 7.4 of the Interim Procedures provided in part that "The aggrieved may appeal to the Chancellor after the President's decision has been reached if the President does not concur with the recommendations of the hearing committee."

[5]Section 7.4 of the Interim Procedures provided in part that the review committee "shall review the case and arrive at a decision which shall be binding on all parties . . . ."

repair,[6] and recommended that plaintiff be reappointed at a rank consistent with his background and experience. The committee concluded its report by acknowledging its "serious responsibility here, since [section 7.4 of the Interim Procedures] which was in effect at the time this grievance was filed, provides that this Committee's decision 'shall be binding on all parties.' "

On June 16, 1972, the chancellor, purporting to exercise the authority conferred by the trustees' action of September 23, 1970, refused to accept the committee's decision, which he referred to as "findings and recommendations." He concluded that plaintiff, as a lecturer, could not invoke the procedures available to one with "regular full-time probationary class and rank," and found "no basis" to agree with the recommendation that plaintiff be reemployed.

On December 5, 1973, plaintiff filed the present suit against the trustees and chancellor of the California State University and Colleges and against the president of San Francisco State University, seeking reinstatement and damages. Plaintiff contended "that as a matter of law, the grievance procedure, which terminated in his favor, should be enforced," and "that his dismissal was in violation of the First Amendment guarantees of free speech, since . . . his termination was due to his political and personal beliefs."

The trial court found, inter alia, that the trustees had denied plaintiff the "benefits of the rules and regulations in effect at San Francisco State University at the time of [plaintiff's] employment," and that the "termination of Stanley Ofsevit was an expression of official dissatisfaction with Stanley Ofsevit's political alignments as they related to the structure and organization of the Department of Social Work Education and a denial of rights guaranteed under the First Amendment to the United States Constitution." The court thereafter issued a writ of mandate ordering reinstatement and payment of lost salary and benefits "attributable to the period beginning with the 1970-1971 school year through and including the date of [plaintiff's] reinstatement as a Lecturer

---

[6] As the committee reported, "In our judgment, professional damage was done to Mr. Ofsevit because of the context in which [Acting] Dean Einhorn made his decision [against recommending reappointment]. A letter which attempted to describe the personnel conflict in the department, and which apparently included innuendoes about Mr. Ofsevit's professional competence, was written and given wide distribution by certain members of the [department] faculty. This action, which went outside the normal procedures governing personnel matters and with its unsubstantiated comments about faculty members, seems to have been a significant factor in the evaluation of Mr. Ofsevit by Dean Einhorn and constitutes the context in which professional damage was done to Mr. Ofsevit."

. . .; said salary being reduced by the earnings otherwise accrued by [plaintiff] . . . ."

Defendant trustees appeal from the trial court judgment. The trustees contend that plaintiff was not entitled to the benefit of the university's grievance procedure; that there is no substantial evidence that the university's failure to reappoint plaintiff was in retaliation for plaintiff's exercise of his First Amendment rights; and that the trial court erred both in ordering plaintiff's reinstatement and in awarding plaintiff more than one year's lost salary. We turn first to the propriety of the trial court's findings with respect to the grievance procedures.

1. ▉ *The university procedures pursuant to which plaintiff filed his grievance provided in part that the decision of the chancellor's review committee was to be binding on all parties. Because the chancellor improperly refused to adopt the recommendation of the chancellor's review committee that plaintiff be reinstated, plaintiff has wrongfully been denied reappointment.*

Plaintiff contends that at the time he filed his grievance, university regulations clearly provided that any decision by the chancellor's review committee would be final and binding on defendant trustees. The trustees argue, however, that because plaintiff had no right to file a grievance, the decision of the review committee lay beyond the committee's jurisdiction and thus did not bind the parties. The trial court in the instant case found that the chancellor's review committee was formed "pursuant to rules and regulations recognized by [plaintiff] and [defendants]," and that the defendants' failure to abide by the review committee's recommendation that plaintiff be reappointed "denied to [plaintiff] the benefits of the rules and regulations in effect at San Francisco State University at the time of [plaintiff's] employment." We agree with the trial court's finding.

On April 17, 1970, pursuant to powers vested in them by statute and regulation,[7] defendant trustees promulgated "Interim Grievance and Disciplinary Action Procedures" to apply to grievances initiated after that date. The preamble to the grievance procedures recites in part, "For all matters in which a member of the faculty or administrative staff may believe that an injustice has been done with regard to his rights and privileges, he shall have the prerogative of availing himself of the procedures set forth herein." Defendants contend that according to

---

[7]See footnote 2, *ante.*

uniform university policy, a lecturer has no right to continued employment, and thus plaintiff was not entitled to pursue his alleged "grievance" under the provided procedures. Nevertheless, the matter of plaintiff's procedural entitlement is not controlled by rigid categorization of "rights" and "privileges," but by examination of all the terms and conditions of plaintiff's employment. ■ As the court stated in *American Federation of Teachers* v. *Oakland Unified School District* (1967) 251 Cal.App.2d 91, 97 [59 Cal.Rptr. 85], "Rules and regulations adopted by a board of education are, in effect, a part of a teacher's employment contract and the teacher is entitled to their enforcement." ■ As we shall explain, plaintiff is entitled to enforcement of the Interim Grievance Procedures.

Section 1.3(a) of the grievance procedures defines "the faculty" to include lecturers serving on annual appointment in the university. (See Interim Grievance and Disciplinary Action Procedures, § 1.3(a), incorporating by reference S. F. State U. Const., May 26, 1965, § 2.) Section 2.0 provides as to the initiation of a grievance: "If any member of the faculty or administration—hereafter referred to as 'the aggrieved'—believes that an injustice has been done to him in connection with his individual rights, benefits, working conditions, appointment, *reappointment,* tenure, promotion and reassignment, he may initiate a grievance procedure by submitting his request to the Chairman of the Council." (Italics added.) Thus despite the fact, as defendants contend, that plaintiff's employment was to expire without any contractual right to renew, the terms of plaintiff's employment expressly gave him the right to a review of the trustees' administrative decision as to his nonreappointment.

The grievance procedures prescribed the duties of President Hayakawa with respect to the findings and recommendations of the hearing committee. As we have noted, his decision did not concur with the judgment of the hearing committee. Under section 7.1 of the procedures, however, "The decision of the President on each case is final on the campus."

Plaintiff was thereupon remitted to his right of appeal to the chancellor. Section 7.4 of the university grievance procedures provides in pertinent part, "The aggrieved may appeal to the Chancellor after the President's decision has been reached if the President does not concur with the recommendations of the hearing committee. . . . If the ag-

grieved appeals, the Chancellor shall appoint a Chancellor's Review Committee . . . . This committee shall review the case and arrive at *a decision which shall be binding on all parties . . . .*" (Italics added.)

The trustees assert, however, that under the rules in effect at the time the matter was referred to the Chancellor's Review Committee, the decision of that committee was not binding, but only advisory and subject to the final decision of the chancellor. The trustees on September 23, 1970, did purport to authorize such a change by both a general and an emergency resolution, and on September 30, 1970, the chancellor issued an executive order so providing. (See *Poschman* v. *Dumke* (1973) 31 Cal.App.3d 932, 939-943 [107 Cal.Rptr. 596], hg. den., June 28, 1973.) While the chancellor's office acknowledged plaintiff's request for review with a reference to "regulations adopted by the Board of Trustees on September 23, 1970, [under which] the Chancellor's Review Panel is now advisory to the Chancellor and his decision is now final . . . ," the findings and recommendations of the panel itself specifically referred to the panel members' responsibility in making a *binding* decision as provided in the Interim Grievance Procedures. In any event, this issue was raised in the trial court, at which point the trustees conceded that if plaintiff were entitled to the protection of the grievance procedures, those procedures in effect prior to the purported change of September 23, 1970, would govern. The trustees do not now seriously question that concession.

We therefore affirm the trial court's finding that the trustees denied plaintiff the benefit of the university rules and regulations. Plaintiff is entitled to relief in order to enforce the binding decision of the chancellor's review committee under the university grievance procedures applicable to his case.

2. ■ *The trial court's conclusion that plaintiff's reappointment was denied on the basis of his political activities and in violation of his First Amendment rights is supported by substantial evidence, and thus the court properly held the trustees' action invalid.*

The trial court's determination that plaintiff was improperly denied reappointment is further supported by the court's finding that defendants failed to reappoint plaintiff in retaliation for conduct within the protection of the First Amendment.[8] Although defendants contend that

---

[8]The pertinent findings and conclusions state: "At all times material hereto, while an employee of California State University, San Francisco, Stanley Ofsevit was a member of

substantial evidence does not support the trial court's finding, we believe that the record sustains the conclusion that defendants have denied plaintiff the exercise of his First Amendment rights.

We have heretofore expressed our insistence, in the context of review of administrative decisions, that the courts retain the ultimate responsibility for insuring that fundamental constitutional rights not be abridged in the absence of a sufficiently compelling public interest. (*Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575, 592 [100 Cal.Rptr. 16, 493 P.2d 480].) As we have explained, "[u]nquestionably, a broad discretion reposes in governmental agencies to determine which provisional employees they will retain. . . . Nevertheless, when the record in a given case clearly establishes that unconstitutional conditions have been imposed upon the retention of public employment, we cannot permit the deference which we would otherwise accord administrative determinations to bar us from discharging our obligation to protect overriding constitutional rights." (*Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 562-563 [55 Cal.Rptr. 505, 421 P.2d 697].)

Thus we have held that a dismissed public employee is entitled to a judicial determination of the true reason for his dismissal when he seeks to show that he was dismissed because of his exercise of constitutional rights. In reviewing such a dismissal the trial court not only examines the administrative record for errors of law, but also exercises its independent judgment upon the evidence disclosed. (*Bekiaris* v. *Board of Education, supra,* 6 Cal.3d 575, 593.) Once the trial court has resolved the constitutional issue by an independent assessment of the factual elements, the appellate court reviews the record to determine whether the trial court's findings find support in substantial evidence[9] in light of the entire record. (*Bekiaris* v. *Board of Education, supra,* 6 Cal.3d at p. 592, fn. 11; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143-144, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].)

---

Local 1352 of the American Federation of Teachers, AFL-CIO, now known as United Professors of California, AFL-CIO and participated in that Organization and its collective activities concerning wages, hours and conditions of labor. [¶] During the school year 1968-1969, Stanley Ofsevit was an outspoken academic employee favoring the political activities of students and academic employees in connection with a student and faculty strike which began in 1968 and continued into the calendar year. [¶] The termination of Stanley Ofsevit was an expression of official dissatisfaction with Stanley Ofsevit's political alignments as they related to the structure and organization of the Department of Social Work Education and a denial of rights guaranteed under the First Amendment to the United States Constitution . . . ."

[9]"Substantial" evidence is evidence of " 'ponderable legal significance . . . reasonable in nature, credible, and of solid value.' " (*People* v. *Bassett* (1968) 69 Cal.2d 122, 138-139 [70 Cal.Rptr. 193, 443 P.2d 777].)

 A review of the record in the present case discloses substantial evidence to support the trial court's finding that plaintiff's outspoken "political alignments" triggered his dismissal. Initially, plaintiff presented testimony at trial that defendants dismissed him in response to his membership in and active support of Local 1352 of the American Federation of Teachers, AFL-CIO.[10] While defendants' affidavits attest to defendants' ignorance of the extent of plaintiff's political activities, and describe the decision not to reappoint plaintiff as based solely on academic considerations,[11] the evidence indicates otherwise. Acting Dean Einhorn admitted his anticipation that plaintiff's nonreappointment "would be—likely be taken as discriminatory because of [plaintiff's] union membership." The vice president for academic affairs, whose final decision not to reappoint plaintiff gave rise to plaintiff's grievance, acknowledged "the fact that the Department of Social Work Education was suffering from considerable strife and was in a state of disarray," and explained his "feeling that [plaintiff] was one of those persons contributing to the problems of interpersonal relationship that were hindering the efficient functioning of the Department." President Hayakawa himself cited plaintiff's "activities and, hence, his possible contribution to polarization within the department" as a basis for dismissing plaintiff. Finally, plaintiff presented evidence that several of his colleagues had circulated a letter falsely accusing him of "militant pro-union[ism]"; the chancellor's review committee found that this letter, "with its unsubstantiated comments," had affected plaintiff's nonreappointment and had caused him "professional damage."[12]

On the basis of this record, the trial court appropriately exercised its independent judgment to find that the decision not to reemploy plaintiff turned on considerations of plaintiff's political activities, rather than on academic and professional reasons. Consequently, we uphold the trial court's decision that plaintiff's nonreappointment violated plaintiff's

[10]Plaintiff stated in a declaration that: "I am informed and believe, and on the basis of this information and belief allege, that the administration felt that although I was no more 'guilty' of the personality disputes [in the department] than any other member of the department, I symbolized to them a political polar extreme and they saw that getting rid of me, not for anything I had done or said, but for what I symbolized, might lead toward peace among the remaining members of the department who disagreed with what I symbolized. Absolutely no disciplinary action was taken toward persons who disagreed with my political opinions or statements or who represented either the opposite end of the political spectrum or the center of the spectrum. . . ."

[11]The findings of plaintiff's grievance committee refute the trustees' assertion that valid academic considerations influenced their decision. See footnote 3, *ante.*

[12]See footnote 6, *ante,* page 769.

rights under the First and Fourteenth Amendments to the United States Constitution.

3. *In light of our holding that the trustees violated plaintiff's First Amendment rights by denying him reappointment, plaintiff is entitled to immediate reinstatement and to payment of damages in the amount of lost benefits and net loss of salary from the date of the improper denial of reappointment, to the date of his reinstatement.*

The trial court in the instant case held that plaintiff was "entitled to the issuance of a Peremptory Writ of Mandate directing that he be reinstated and made whole for all lost wages and benefits from the 1970-1971 school year through and including the date of his reinstatement as a lecturer at San Francisco State University." The trustees dispute plaintiff's right to reinstatement, and contend further that in any event the trial court erred in awarding plaintiff more than one year's salary. As we explain, however, we believe that under the circumstances of this case both the order of reinstatement and the back pay award were proper.

The trustees argue initially that because plaintiff was a lecturer who worked under an annual contract, plaintiff had no expectation of continued employment beyond the one-year period ending at the close of the 1970-1971 school year. Since the one-year period of his contract has long since expired, the trustees contend that plaintiff is not presently entitled to reinstatement.

The trustees, however, may not defeat plaintiff's claim to reinstatement by invoking the fact that plaintiff cannot assert either "tenure" or a statutory right of reemployment. As the United States Supreme Court has made clear, even a temporary employee who has no reasonable expectation of continued employment, who "could [be] discharged for no reason whatever, . . . may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms. *Perry* v. *Sindermann,* 408 U.S. 593 (1972)." (*Mt. Healthy City Board of Ed.* v. *Doyle* (1977) 429 U.S. 274, 283-284 [50 L.Ed.2d 471, 481, 97 S.Ct. 568].) In the present case, of course, we have upheld the trial court's finding that defendants rendered their decision not to reappoint plaintiff because of plaintiff's exercise of constitutionally protected First Amendment rights,

and thus it follows that the trial court properly ordered plaintiff's reinstatement.[13]

Similarly, the applicable authorities fully support the trial court's back pay award. Although the trustees contend that in light of his one-year contract plaintiff enjoyed no reasonable expectation of reemployment beyond the 1970-1971 academic year and consequently should receive only one year's salary in back pay, the relevant constitutional decisions are to the contrary. Those decisions establish that both tenured and nontenured teachers who have been discharged in violation of their First Amendment rights are entitled to full back pay from the time of their unconstitutional dismissal to the date of their reinstatement.

In *Gieringer* v. *Center School District No. 58* (8th Cir. 1973) 477 F.2d 1164, cert. den., 414 U.S. 832 [38 L.Ed.2d 66, 94 S.Ct. 165], for example, the school board employed John Gieringer for the 1969-1970 school year as a nontenured elementary school teacher. In October 1969 Gieringer delivered an impromptu report at a meeting of the teachers association concerning the ability of the school district to raise teachers' salaries. Gieringer's superintendent received word of Gieringer's critical report and subsequently recommended that Gieringer's contract not be renewed. In March 1970 the school board voted unanimously to adopt the superintendent's recommendation, and declined to renew Gieringer's contract.

When Gieringer sought reinstatement and compensatory damages for the alleged infringement of his constitutional rights, the court of appeals held that his report related to a matter of public concern, and was protected within the boundaries of the First Amendment. Because Gieringer was dismissed for a constitutionally impermissible reason, the court ordered Gieringer reinstated, and awarded him loss of back pay to the date of his reinstatement, subject to mitigation by his earnings since his dismissal. (477 F.2d at p. 1167.) The courts in *Stolberg* v. *Board of Trustees for State Col. of Conn.* (2d Cir. 1973) 474 F.2d 485 and *Johnson* v.

---

[13]We reject the trustees' argument that the "effect" of such a reinstatement order will be the conferral of tenure "without the in depth performance appraisals all other tenured professors are required to undergo." Once defendants have reinstated plaintiff to the one-year term under the "Lecturer" status he previously enjoyed, they remain free to evaluate his academic performance according to existing statutory and administrative criteria. The right of reinstatement in no way precludes defendants from inquiring into plaintiff's present professional qualifications or performance or from ordering his dismissal if it is properly determined that there are grounds to justify his discharge. (Cf. *Monroe* v. *Trustees* (1971) 6 Cal.3d 399, 412 [99 Cal.Rptr. 129, 491 P.2d 1105].)

*Butler* (W.D.Va. 1977) 433 F.Supp. 531 ruled likewise that nontenured teachers dismissed in violation of their First Amendment rights were entitled to reinstatement and back pay from the time of the unlawful termination of their contracts until the date of their reinstatement.

Because the trial court in the instant case found that defendants had terminated plaintiff's contract in retaliation for plaintiff's exercise of his First Amendment rights, the trial court properly granted plaintiff a back pay award as comprehensive as that granted to teachers Gieringer, Stolberg, and Johnson.[14] In the instant case, this full back pay award will serve not only to make plaintiff whole, but also to discourage similar unconstitutional dismissals in the future.[15]

[14]We note that a plethora of statutory provisions both in California and elsewhere demonstrates a general policy in favor of full back pay awards even in the absence of constitutional violations. Thus, for example, under the National Labor Relations Act, even an at-will employee who is improperly dismissed is entitled to an award of full back pay from the date of the improper dismissal to the date of his reinstatement. (29 U.S.C. § 160(c).) As the United States Supreme Court explained in *NLRB* v. *Rutter-Rex Mfg. Co.* (1969) 396 U.S. 258, 263 [24 L.Ed.2d 405, 410, 90 S.Ct. 417]: "[T]he purpose of the remedy is clear. 'A back pay order is a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice.' [Citation omitted.]"

Numerous California statutes in the Education Code and in other areas provide for similarly comprehensive back pay remedies. Thus, for example, section 89540, former section 24310, of the Education Code provides that with respect to both tenured permanent teachers and untenured probationary teachers, "[i]f the dismissal, suspension, or demotion . . . [of the teacher for cause] is revoked or modified . . . the employee shall be restored to his position in accord with the decision, and shall be paid back salary *equal to that which the employee would have earned if continuously employed in accord with the decision.*" (Italics added.) (See also former Ed. Code, §§ 13439, 13516.5, now §§ 44946, 45037 (certificated employee of school district); §§ 13408, 13409, 13411, now §§ 87735, 87736, 87738 (regular and certificated employees of community college district); Gov. Code, § 19584 (employee of state civil service); Lab. Code, § 1426 (permitting State Fair Employment Practice Commission to order employer to reinstate employee with full back pay when employer is found to have engaged in unlawful employment practice).)

[15]The trustees rely on *Zimmerer* v. *Spencer* (5th Cir. 1973) 485 F.2d 176, and *Frost* v. *Trustees* (1975) 46 Cal.App.3d 225 [120 Cal.Rptr. 1], for the conclusion that back pay is not available to plaintiff. Both cases are distinguishable from the instant case.

In *Zimmerer,* the court found a nontenured teacher's dismissal improper only because of the defendants' failure to provide the teacher with a hearing to which she was entitled. Finding "that the [defendant] Board's reasons for its actions were valid, and . . . that the controversy was intractable and recognized by the parties to be such," the court concluded that "as a practical consequence . . . the most Dr. Zimmerer lost was one year's pay." (485 F.2d 176, 179.) In the instant case, by contrast, the record does not in any way reveal that plaintiff's performance would inevitably have led to his termination after one additional year of teaching.

The *Frost* decision is also distinguishable from the present case. In *Frost* the court upheld the chancellor's decision to reinstate a probationary academic employee, but to deny him back salary. The claim in *Frost* for payment of back salary, however, was not based on an alleged violation of constitutional rights, as in the present case.

Thus we cannot conclude that plaintiff's eight-year struggle for vindication should yield him reappointment with only one year's back pay. Such a "victory" would be Pyrrhic indeed. His reemployment is for a coming single one-year entitlement; for further employment he must prove his competence in accordance with lawful university procedures. His loss of earnings, however, encompasses seven years, and upon a proper showing he should recover the whole appropriate damages.

The judgment is affirmed.

Bird, C. J., Mosk, J., Richardson, J., Manuel, J., and Newman, J., concurred.