[No. F011159. Fifth Dist. Dec. 1, 1989.]

LEROY DEL DON, JR., Plaintiff and Respondent, v.
JOHN K. VAN DE KAMP, as Attorney General, etc., et al.,
Defendants and Appellants.

**COUNSEL**

John K. Van de Kamp, Attorney General, Richard D. Martland, Chief Assistant Attorney General, Richard M. Frank and Corinne Lee Murphy, Deputy Attorneys General, for Defendants and Appellants.

Trimbur, Davis, Clark, Jacobson & Avila and Philip A. Pimentel for Plaintiff and Respondent.

OPINION

BROWN (G. A), J.*—The Department of Justice of the State of California (hereinafter Department) appeals from an order of the superior court granting a writ of administrative mandamus (Code Civ. Proc., § 1094.5) directing the Department "to issue a new license and permit to possess and/or transport and sell machine guns in the State of California" to Leroy Del Don, Jr. (Del Don). The judgment and order of the superior court in effect reversed the adminstrative law judge who found, "Cause exists, pursuant to Penal Code sections 12230 and 12233, to deny reissuance of respondent's permit to possess and/or transport and license to sell machine guns."

The cause before the superior court was submitted on the administrative record without presentation of additional evidence.

FACTS

Since 1973 Del Don has been issued an annual license to sell machine guns to law enforcement agencies (Pen. Code,[1] § 12250)[2] and an annual permit to possess machine guns for the sale to law enforcement agencies pursuant to section 12230.[3]

A copy of the license to sell and the permit to possess and/or demonstrate machine guns "FOR THE PURPOSE OF SALES OF MACHINE GUNS TO LAW ENFORCEMENT AGENCIES" for the year beginning April 13, 1984, and ending April 12, 1985, is attached as appendix A.[4]

A letter dated May 10, 1984, accompanied this license and permit, which stated in relevant part: "The Department of Justice (DOJ) has recently

---

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1] All code references are to the Penal Code unless otherwise indicated.

[2] Section 12250 provides in pertinent part: "(a) The Department of Justice may grant licenses in a form to be prescribed by it effective for not more than one year from the date of issuance, to permit the sale at the place specified in the license of machineguns subject to all of the following conditions, upon breach of any of which the license shall be revoked: [Conditions not relevant.]"

[3] Section 12230 provides: "The Department of Justice may issue permits for the possession and transportation or possession or transportation of such machineguns, upon a satisfactory showing that good cause exists for the issuance thereof to the applicant for such permit but no permit shall be issued to a person who is under 18 years of age."

[4] Del Don has also held a federal license to sell machine guns since 1970.

completed a background investigation concerning your machine gun permit and license. The investigation report reveals that you possess fifteen[5] machine guns which you consider as a collection, and you stated that the Thompson machine guns in your collection are curios and relics with no importance to law enforcement agencies. . . .

"Bureau guidelines prohibit citizens from possessing machine guns as part of a weapons collection, . . .

"Enclosed are Permit to Possess and/or Transport Machine Guns number 407-R, and License to Sell Machine Guns at Retail number 58-R. The permit and license are valid for a period of one year from date of issuance. During this one-year period, you are directed to dispose of all machine guns (including the eight Thompson machine guns) in your inventory not specifically needed for sales and demonstrations for the purpose of sales to law enforcement agencies, and to notify this office in writing of the disposition of these machine guns. Please submit to this office an inventory of machine guns which you possess for sales and demonstrations for the purpose of sales to law enforcement agencies. . . ."

Having heard nothing from Del Don, the Department sent a second letter to Del Don on April 1, 1985, reminding him of the conditions of the May 10 letter and stating in pertinent part: "Please send the above requested documentation as soon as possible since your machine gun permit and license will expire on April 12, 1985. If we do not receive any communication from you prior to April 12, 1985, this office will not renew your permit and license and you will be in violation of Penal Code Section 12220."[6]

A meeting between representatives of the Department and Del Don on April 17, 1985, resulted in an agreement between the parties whereby the Department would issue a temporary license and permit for the purpose of sales and/or demonstration for the purpose of sales to law enforcement agencies for six months, with the understanding Del Don would dispose of all Thompson machine guns except one. The permit was actually issued on May 22, 1985, and expired on November 22, 1985, and was accompanied by a letter dated May 17, 1985, in which the Department explained: "The Department of Justice (DOJ) *will allow you to maintain one (1) Thompson* machine gun in your inventory for your marketing technique in sales and demonstrations for the purpose of sales of contemporary machine guns to law enforcement agencies. During this six-month period, you must either dispose of the weapons permanently, sell the weapons to authorized persons

---

[5] As appears later in the letter, while there were 15 machine guns, there were only 8 Thompson machine guns.

[6] Section 12220 makes it a felony to possess a machine gun without a permit.

in other states, or store the weapons in other states that do not regulate machine guns. Please notify this office in writing as to the disposition of the Thompson machine guns."

On October 24, 1985, and again on November 20, 1985, the Department reminded Del Don by letter of the imminent expiration of his temporary permit, that he had not met the conditions of the permit, and the permit and license would not be renewed.

"Although you have applied for renewal of your permit and license and paid your renewal fee, you have not met the conditions stated in the above referenced letters. Therefore, the Department of Justice will not renew your machine gun permit and license. Pursuant to Penal Code Section 12220, it will be illegal for you to possess or sell any machine guns after November 22, 1985. The renewal fee which you sent will be refunded to you in a separate letter."

On November 21, 1985, a day before the expiration of the temporary permit, Del Don filed a petition in the superior court seeking mandate to compel the Department to renew his license and permit. Because the administrative remedy had not been exhausted, the parties agreed further action in the mandate proceedings would be suspended until an administrative hearing was held, and in the meantime the Department would issue a sales license and permit on the same conditions as the former permit "PENDING THE OUTCOME OF THE PROCEEDINGS OF THE PETITION FOR WRIT OF MANDATE." On November 23, 1985, the license and permit were issued pursuant to the agreement.

Approximately two years later, on November 18, 1987, an amended petition for administrative mandamus was filed. In the meantime, a full administrative hearing was held before an administrative law judge. That hearing culminated in a decision by the administrative law judge which in pertinent part is contained in appendix B.

· A number of persons testified at the administrative hearing. David Witt, a criminal identification specialist for the Department, conducted a routine background check into Del Don's license and permit. Witt's attention was drawn to a sizeable inventory of machine guns manufactured in the 1920's and 1930's. This resulted in the letter of May 10, 1984, from the Department to Del Don which has been referred to. Witt acknowledged Del Don had properly cared for guns in his possession, he had not violated any terms of his license to sell (§ 12250) but only his permit to possess and demonstrate for the purpose of sale, the Department had no quarrel with Del Don as a gun salesman, and Del Don was a law-abiding citizen.

Jacob Nehr was a special agent assigned to the Bureau of Investigation. Nehr met Del Don three or four times. The first time was in 1976 when investigating Del Don's application for a renewal of his machine gun license and permit. According to Nehr, Del Don had a truck farming operation and a chemical business. Nehr conducted a different investigation in 1980. Nehr catalogued 16 sales of all automatic weapons to law enforcement agencies or collectors between 1975 and 1980. According to Nehr, Del Don would trade state-of-the-art weapons to police agencies in return for Thompson machine guns. Del Don had no reported sales in 1980.

Nehr testified that some Thompson machine guns could be valued at between $3,000 and $5,000. During his later investigation, Nehr noticed that Del Don had several Thompson machine guns and only one Colt M-16 machine gun in his inventory. Nehr concluded that Del Don was a collector, not a dealer of machine guns.

Nehr testified that modern special weapons and tactics (SWAT) teams preferred Ingrams and new Heckler & Koch machine guns. Nehr testified that Del Don referred to his weapons as part of a collection. According to Nehr, Del Don was proud that he was adding Thompson machine guns to his collection. Del Don further admitted to investigators that his machine gun collection had little importance to law enforcement officials.

Nehr contacted Del Don again in 1984. Nehr noted that the total number of Thompson machine guns in Del Don's collection had increased from an inventory of four in 1976 to an inventory of eight in 1984. Nehr also catalogued a series of demonstrations Del Don had conducted for law enforcement.

Nehr testified that the purpose of issuing a permit for possession of machine guns that included demonstrations was that such demonstrations would be for sales. Nehr further testified that a condition of Del Don's most recent permit for possession of machine guns was that demonstration be related to an attempt to sell weapons.

Larry Osborn is a teacher and weapons instructor at the California Highway Patrol Academy for new recruits. Osborn testified that the California Highway Patrol (CHP) had not used automatic weapons for many years. The CHP had used Thompson machine guns some time after World War II but disposed of them during the 1960's.

Osborn was directed to research the purchase of new automatic weapons for the CHP. He did consider the use of Thompson machine guns. He found, after investigation, that there were problems with the size and weight

of the gun. He also discovered that the caliber of the projectile was not used by most law enforcement agencies. The CHP was looking for a weapon in which there was an interchangeability of both ammunition and training. Also, Thompson machine guns tended to be very expensive. The CHP decided to purchase the Heckler & Koch model MP-5A3, a weapon that uses nine millimeter ammunition.

As part of his investigation, Osborn contacted 13 law enforcement agencies.[7] No department used the Thompson machine gun because each considered it obsolete. Law enforcement agencies preferred lighter weapons that were easier to field strip and clean. Also, other models of machine gun were far less expensive than the Thompson machine gun.

Richard Price, a captain with the Sacramento County Sheriff's Department, also testified. Captain Price stated that the Sacramento County Sheriff's Department used Ingram machine guns with suppressors (also known as silencers) and Browning automatic rifles. Though Price considered a Thompson machine gun good equipment, he testified that it was not a state-of-the-art weapon and not well suited for the needs of modern law enforcement. Price conceded that some Browning automatic rifles were manufactured in the 1920's, though one he had recently bought was manufactured in 1958. Many Brownings, however, had been manufactured at the same time as Thompson machine guns.

James Hall is a sergeant with the San Francisco Police Department and supervisor of that department's SWAT team. Hall testified that the San Francisco Police Department currently has 23 Thompson machine guns in its inventory. Hall testified that the Thompson is devastating at short distances in the hands of a skilled operator. His department, however, was planning to purchase the Heckler & Koch model MP-5. Hall testified that the Heckler & Koch would be a superior weapon over the Thompson for short distance use.

Dallas Faulkner is a sergeant with the City of Stockton Police Department. He is also a coordinator for department firearms and for the SWAT team. The Stockton Police Department has one Thompson machine gun in its inventory, one M-10 Ingram, one Heckler & Koch model MP-5, a Luger M-14 and FNFAL. Faulkner testified that the Thompson machine gun is not currently in use except for demonstration purposes. He conceded that

---

[7] Osborn contacted the following agencies: United States Secret Service, Los Angeles Police Department, San Diego Police Department, Stockton Police Department, Sacramento Police Department, FBI, Los Angeles County Sheriff's Office, El Dorado County Sheriff, San Francisco Airport Police, San Jose Police Department, United States Border Patrol, Yolo County Sheriff's Office, and the California Department of Corrections.

most law enforcement agencies use more modern weapons than the Thompson machine gun. He further conceded that Thompson machine guns are obsolete by contemporary standards.

Faulkner did state that it was valuable for his department to receive semiannual demonstrations of how to use Thompson machine guns from Del Don. According to Faulkner, demonstrations were useful to train police officers for odd, unexpected situations on the streets. Faulkner conducts two training classes for his officers each year. Del Don normally attends each class. Del Don would provide both the weapons and ammunition for his demonstrations. He would bring each model of Thompson machine gun.[8] According to Faulkner, Thompson models 21 and 28 have a bolt on the top of the weapon, whereas model M-1A1 has a bolt on the side of the weapon. All Thompsons are otherwise functionally similar.

Faulkner testified that Del Don performs a service for his department through his demonstrations. He also testified that the differences between the Thompson models have value primarily to collectors.

Del Don also testified at the administrative hearing. He has been a farmer since age 18. Del Don has owned a chemical business since 1970. Since 1973, he has also been a class III gun dealer.

Del Don testified extensively concerning a number of police agencies he has dealt with since obtaining his license to sell machine guns and his permit to possess machine guns. He also testified that he often demonstrated use of the Thompson machine guns to police agencies. According to Del Don, everyone wants to see the Thompson machine gun first. Del Don described the Thompson machine gun as a finely built weapon, a Rolls Royce.

Del Don testified that many Thompsons were in service until the late 1960's. He testified that he had sold a Thompson M-1A1 to the Exeter Police Department for $100 immediately before the hearing. The reason he sold it was that he had two of the same model. This was a mass-produced cheaper model unlike the earlier hand-built models many of which had fine wooden stocks and engraved lettering. These earlier models were very expensive.

Del Don testified that he likes guns and makes money selling guns. He stated that he scrupulously tries to follow the rules. He told the administra-

---

[8] The Thompson machine gun comes in five models. They are models 21, 28, 28A1, M-1, and M-1A1.

tive law judge that his primary purpose in owning the Thompson machine guns is as a dealer. He denied that his goal was to be a collector. He claimed that he never has been a collector. He denied he ever told Nehr that he was a collector. Del Don testified that he demonstrates his Thompsons for sale to police departments every year. He also claimed that he would sell each and every one of his Thompson machine guns.

Del Don admitted that his sales of machine guns ran in spurts. He admitted that he could not support his family as a gun dealer and that his livelihood was dependent upon his farming operations.

Del Don wanted to keep an inventory of each version of the Thompson machine gun. He tried to sell the rest to dealers or to police departments. He claimed that the Browning automatic rifle was as obsolete as the Thompson, if either was obsolete. Del Don stated that he spent $10,000 for his walk-in vault and paid $50 a month for his alarm system. He also spent between $1,100 and $1,300 for a safe and alarm system for his van.

## DISCUSSION

The parties agree the trial judge, in reviewing the administrative record and in making his decision, was entitled to exercise his independent judgment. As stated in subsection (c) of Code of Civil Procedure section 1094.5, ". . . in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence." (*County of Alameda* v. *Board of Retirement* (1988) 46 Cal.3d 902, 906 [251 Cal.Rptr. 267, 760 P.2d 464]; *Strumsky* v. *San Diego County Employees Retirement Assoc.* (1974) 11 Cal.3d 28, 31 [112 Cal.Rptr. 805, 520 P.2d 29]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 140 [93 Cal.Rptr. 234, 481 P.2d 242].)

■ Where the superior court properly exercises its independent judgment as in the instant case, on appeal its decision is reviewed for substantial evidence. (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308-309 [196 P.2d 20].) As *Moran* stated: "It follows that the question before us is whether the evidence, viewed in the light most favorable to petitioner, sustains the findings of the trial court to the effect that the charges against petitioner were not supported by the weight of the evidence." (32 Cal.2d at p. 309.)

■ The trial court based its decision squarely upon the assumption the case was one of revocation of Del Don's permit pursuant to section 12233[9] rather than renewal of the permit pursuant to section 12230 (see fn. 3, *ante*). Thus the trial court stated: "Therefore, the action of the Department in revoking petitioner's license [permit] can be justified only if it meets at least one of the three criteria set forth in § 12233 of the Penal Code, to wit, (a) the need for the firearms has ceased or (b) the holder of the permit has used the firearms for purposes other than those allowed by the permit or (c) the holder of the permit has not exercised great care in retaining custody of the weapons possessed under the permit.

". . . . . . . . . . . . . . . . . . . . .

"As noted earlier, the burden of proof is upon the Department to show that revocation of the petitioner's license is justified under the provisions of Penal Code § 12233. The parties stipulated that one of the three causes for revocation (that the permitee [*sic*] was not exercising great care in retaining custody of the weapons) was not applicable. This Court finds that the need for possession of petitioner's Thompson submachine guns has not ceased, in that they are valuable either as demonstration weapons for sales of other machine guns or similar weapons or, as discussed in the evidence, even for sales of Thompson machine guns themselves, one of which occurred shortly before the administrative hearing began. This Court further finds that the petitioner has not used said weapons for purposes other than those allowed by his permit and license, namely, sales or demonstration for sales to law enforcement."

In this regard we are of the opinion the trial court erred because section 12230 vests the Department with wide discretion in determining whether renewal of a permit should be refused, unlike determining if a statutory basis for revocation exists. Factually there can be no dispute that the central issue should have been whether the Department had good cause for refusing to renew Del Don's permit pursuant to sections 12230 and 12231.[10] The correspondence between Del Don and the Department shows beyond cavil the Department's position was it would not renew Del Don's license unless he complied with the conditions of the 1984-1985 permit and the letters

---

[9] Section 12233 provides: "Permits issued in accordance with this chapter may be revoked by the issuing authority at any time when it appears that the need for the firearms has ceased or that the holder of the permit has used the firearms for purposes other than those allowed by the permit or that the holder of the permit has not exercised great care in retaining custody of any weapons possessed under the permit."

[10] Section 12231 in pertinent part provides: ". . . A permit granted pursuant to this article may be renewed one year from the date of issuance, and annually thereafter, upon the filing of a renewal application and the payment of a permit renewal fee not to exceed the application processing costs of the Department of Justice. . . ."

written in conjunction with those permits imposing the condition that Del Don dispose of all Thompson machine guns except one. Del Don explicitly applied for renewal of the 1984-1985 permit and paid the fee which was rejected by the Department because he had not complied with the conditions upon which the 1984-1985 permit was issued. The statement of issues, which defined the issues before the administrative law judge, framed the question in terms of denial of Del Don's application for renewal of a permit and license, not revocation of the existing permit and license. Moreover, Del Don's petition for mandate alleged the Department had no discretion to deny renewal of the permit but on application the renewal license should be issued automatically. Finally, the administrative law judge's decision treated the matter as one of refusal to reissue the license. It stated "[c]ause exists, pursuant to Penal Code . . . , to deny reissuance of respondent's permit . . . and license . . . ." Simply put, the 1984-1985 permit and license were not revoked during the period they were in effect.[11]

The Department refused to renew the permit because in its discretion it determined Del Don had not complied with the conditions of the permit, that is that he dispose of all Thompson machine guns except one and Del Don did not possess the Thompson machine guns for the purpose of sales of machine guns to law enforcement agencies as required by the permit.[12]

Germane to the Department's exercise of discretion is the strong public interest in the proper control of machine guns. That public interest is reflected in a lengthy history of legislative enactments. For over 35 years section 12220[13] has made the possession, sale or transportation of machine guns without a permit a felony. Permits are issued only for good cause

[11] Del Don refers to certain statements made by the Department's counsel at the administrative hearing to the effect the renewal proceedings were the same as a revocation. In context, the Department's counsel was referring to the legal requirements of due process being the same for renewal as for a revocation. Both involve a fundamental vested right. (*Suckow* v. *Alderson* (1920) 182 Cal. 247, 249 [187 P. 965]; *Reed* v. *Village of Shorewood* (1983) 704 F.2d 943, 948-949; Cal. Administration Hearing Practice (Cont.Ed.Bar 1904) § 134, p. 32.) In our view, counsel was not equating the broad discretionary power of the Department in issuing or reissuing or refusing to issue or reissue a permit under section 12230 with the Department's authority to revoke pursuant to the terms of section 12233.

[12] A fortiori, if Del Don did not possess the Thompson machine guns for the purpose of sale of machine guns, he would be in violation of section 12233 which authorizes the Department to revoke a permit when "the holder of the permit has used the firearms for purposes other than those allowed by the permit."

[13] Section 12220 provides: "Any person, firm or corporation, who within this state sells, offers for sale, possesses or knowingly transports a machinegun, except as provided by this chapter, is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison, or by a fine not to exceed ten thousand dollars ($10,000), or by both such fine and imprisonment."

The predecessor section to section 12220 was enacted in 1927, over 60 years ago. (Stats. 1927, ch. 552, §§ 1-2, p. 938.)

(§ 12230) and may be renewed for only a year at a time (§ 12231). The Department requires permit holders to submit periodic inventories of weapons and conducts periodic inspections to ensure proper security measures in the storage and transportation of such weapons are in place and the conditions of permits are being complied with.[14] We conclude the trial court seriously erred in failing to apply the standard of good cause for the renewal of Del Don's permit pursuant to section 12230 rather than the grounds for revocation of an existing permit under section 12233.

We turn now to the issue of whether there is substantial evidence to support the trial court's judgment. Substantial evidence is evidence of " 'ponderable legal significance . . . reasonable in nature, credible, and of solid value; . . .' " (*People* v. *Bassett* (1968) 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777]; see also *Ofsevit* v. *Trustees of Cal. State University & Colleges* (1978) 21 Cal.3d 763, 773, fn. 9 [148 Cal.Rptr. 1, 582 P.2d 88].) In determining whether the test is met, the whole record must be examined.

"As noted, respondent contends that we must consider only supporting evidence, and disregard all contrary evidence. Indeed, the rule is sometimes stated that an '. . . appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*' [Citations.] Such statements, taken out of context, can be misleading, because they do not say how to determine whether the supporting evidence is substantial.

" 'Occasionally an appellate court affirms the trier of facts on isolated evidence torn from the context of the whole record. . . . Had the appellate court examined the whole record, it might have found that a reasonable trier of fact could not have made the finding in issue.' (Traynor, The Riddle of Harmless Error (1969) p. 27.) 'Not every surface conflict of evidence remains substantial in the light of other facts.' [Citation.]

---

[14]The public policy was recently emphasized by the Legislature in the enactment of the Roberti-Roos Assault Weapons Control Act of 1989 (Stats. 1989, ch. 19, § 3, No. 2 West's Cal. Legis. Service, p. 58; No. 2 Deering's Adv. Legis. Service, p. 86) in which the Legislature states: "The Legislature hereby finds and declares that the proliferation and use of assault weapons poses a threat to the health, safety, and security of all citizens of this state. The Legislature has restricted the assault weapons specified in Section 12276 based upon finding that each firearm has such a high rate of fire and capacity for firepower that its function as a legitimate sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure human beings. It is the intent of the Legislature in enacting this chapter to place restrictions on the use of assault weapons and to establish a registration and permit procedure for their lawful sale and possession. It is not, however, the intent of the Legislature by this chapter to place restrictions on the use of those weapons which are primarily designed and intended for hunting, target practice, or other legitimate sports or recreational activities."

"In practice, substantial evidence reviews have necessarily been based on the whole record. To base a determination solely on the supporting evidence in isolation would lead to a stultified review for substantial evidence, if not an actual 'any evidence' rule. But notwithstanding divergent descriptions of the process in appellate opinions, California has not used an 'any evidence' standard for appellate review of sufficiency of the evidence." (*Rivard* v. *Board of Pension Commissioners* (1985) 164 Cal.App.3d 405, 410-411 [210 Cal.Rptr. 509].)

■ It will be noted the language of the permit is ". . . FOR SALES AND/OR DEMONSTRATIONS FOR THE PURPOSE OF SALES OF MACHINE GUNS TO LAW ENFORCEMENT AGENCIES." It does not say for sales or demonstrations for the purpose of sales of Thompson machine guns. The trial court interpreted this language to mean Thompson machine guns were useful and valuable as "demonstration weapons for sales of other machine guns or similar weapons." While it is not entirely clear, the administrative law judge apparently arrived at a similar conclusion when she stated, "It may be appropriate to possess one Thompson or other early model machine gun to demonstrate changes or improvements in the weapons that may assist law enforcement agencies select weapons for purchase. . . . Cause exists, pursuant to Penal Code sections 12230 and 12233, to deny reissuance of respondent's permit to possess and/or transport and license to sell machine guns."

This interpretation is entirely reasonable in light of evidence in the administrative record that Del Don demonstrated the Thompson machine guns to police agencies as part of his marketing technique in the sales of other weapons. As Del Don testified, "It's my foot in the door."

The Department and the administrative law judge felt one Thompson machine gun was ample for this limited purpose. The trial court made no specific finding in this regard, but by implication it found all eight Thompsons owned by Del Don were possessed for the purpose of such demonstrations for sale of other weapons. The evidence showed there are only five different models of Thompsons. Del Don testified he "wanted to keep an inventory of one each version." There is absolutely no evidence to support the need for eight weapons for this purpose. Whether the need is for one, as the administrative law judge found, or five or somewhere in between one and five, is a factual determination that will have to be made by the trial court on remand.

The second crucial finding of the trial court was that Thompson machine guns were possessed by Del Don "for sales of Thompson machine guns themselves, one of which occurred shortly before the administrative hearing began." Upon review of the whole record, we have concluded this finding is not supported by substantial evidence. While there is some evidence to support the finding, in light of the *whole* record that evidence is not of " ' "ponderable legal significance . . . reasonable in nature, credible, and of solid value" ' " (*Ofsevit* v. *Trustees of Cal. State University & Colleges, supra,* 21 Cal.3d 763, 773, fn. 9) and is " 'isolated evidence torn from the context of the whole record' " (*Rivard* v. *Board of Pension Commissioners, supra,* 164 Cal.App.3d at p. 410). We proceed to explain.

In making this finding it appears the trial court relied heavily upon the sale of a Thompson to the Exeter Police Department for $100. The sale occurred after the petition for mandate was filed and just before the administrative hearing. Regarding the circumstance of the sale, Del Don testified he was "getting ready for this hearing," reviewed his inventory and sold the weapon because he had two of the same model. He stated: "Well, in looking over and getting ready for this hearing, I was looking at my inventory. And I did see that I had the M-1—two of the M-IAIs. So when he called me about something—I don't know what he called me about. He called about how to word the purchase order. And I asked him if he was interested in buying a Thompson. And he said that he would check with his chief and he would let me know. And the next day he called and he said he would take it." Later Del Don said "the one I sold that was mass produced. It's the cheapest version. And it was a stamped out weapon."

The other models possessed by Del Don were, according to his testimony, the Cadillacs of machine guns some of which were valued between $700 and $1,000 for one model to $3,000 to $4,000 for the most expensive model. Del Don testified they were far too expensive and "fancy" for law enforcement.

In our view, one cannot draw a legitimate inference from one isolated sale of this cheap mass-produced duplicate Thompson which was sold in preparation for and just before the hearing that all of the other Cadillac versions of the Thompsons were held for the purpose of selling them.

Further, the record as a whole renders such an inference unreasonable. In the 13 years Del Don had a permit and license, this 1986 sale was the only straightforward cash sale of a Thompson machine gun. As reflected in the chart attached as appendix B, all the other transactions, except one in 1975,

involved the acquisition of Thompsons, most of which were acquired by Del Don in exchange for more modern weapons. By this method he continued to build up his inventory. Further, all of the weapons had been in his inventory between six and fifteen years. The transaction that took place on June 19, 1975, approximately 10 years before the hearing, bore serial No. 8680. As appendix B shows, that Thompson was acquired by Del Don on May 23, 1975, but, according to Del Don's testimony, because it was misrepresented it was sold back (a return with a refund) to the seller on June 19, 1975. By no stretch of the imagination can that transaction be considered a sale—in substance it was a return of a misrepresented weapon.

Substantiating this lack of sales by Del Don is the evidence that Thompson machine guns were no longer being used as a weapon of choice by modern law enforcement agencies. Del Don did not effectively refute this testimony. Larry Osborn of the CHP contacted 13 law enforcement agencies and discovered that none used the Thompson machine gun. Each agency considered the Thompson machine gun to be obsolete. Modern law enforcement agencies preferred lighter weight weapons that used interchangeable ammunition. James Hall, the sergeant with the San Francisco Police Department and supervisor of its SWAT team, testified his department had 23 Thompson machine guns in its inventory. It planned to purchase the Heckler & Koch model MP-5 to replace the Thompson. Dallas Faulkner, the sergeant with the City of Stockton Police Department, testified that Del Don provided a service to the department in demonstrating Thompson machine guns as a training exercise. He admitted the one Thompson machine gun in the Stockton Police Department inventory was damaged. He further stated the Thompson was an exotic weapon.

Almost everybody will sell practically anything they own to the right person under the right circumstances at the right price. Similarly, we are of the opinion Del Don would have sold any of his Thompsons under the right circumstances at the right price. But that willingness does not translate into possessing the Thompsons for the *purpose* of *selling* them within the meaning of his dealer's permit.

On the whole record we hold the trial court's finding the Thompson machine guns were possessed for the purpose of selling them was not supported by substantial evidence.

The judgment is reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion. Each party shall bear its/his own costs.

Martin, Acting P. J., and Vartabedian, J., concurred.

APPENDIX A

TO POSSESS AND/OR TRANSPORT MACHINE GUNS
(PENAL CODE SECTION 12230)
STATE OF CALIFORNIA – DEPARTMENT OF JUSTICE
DIVISION OF LAW ENFORCEMENT
P. O. BOX 13417, SACRAMENTO, CALIFORNIA 95813

PERMIT NO. 407-R

CII NO. 4 031 431

NAME OF FIRM OR BUSINESS | ADDRESS

NAME OF PERMITTEE | ADDRESS

LeRoy DEL DON, Jr. | 810 "E" Street, Patterson, CA 95363

| DESCRIPTION: Hair | Eyes | Height | Weight | Place of Birth | Date of Birth |
|---|---|---|---|---|---|
| BRN | BLU | 6-00 | 175 | CALIFORNIA | 2-5-42 |

This permit is issued to possess and/or transport the machine gun(s). Additional conditions, if any: ISSUED FOR SALES AND/OR DEMONSTRATIONS FOR THE PURPOSE OF SALES OF MACHINE GUNS TO LAW ENFORCEMENT AGENCIES. INVENTORY OF WEAPO MAINTAINED BY THE DEPARTMENT OF JUSTICE. YOU ARE NOT ALLOWED TO TRANSPORT ANY MACHINE GUNS. THIS PERMIT IS: VALID FOR ONE YEAR FROM DATE OF ISSUE; NOT TRANSFERABLE; TO BE KEPT ON THE PERSON OF THE PERMITTEE OR AT THE PLACE WHERE THE ABOVE-DESCRIBED DEVICES ARE KEPT; SUBJECT TO INSPECTION BY ANY PEACE OFFICER OR ANY OTHER PERSON DESIGNATED BY THE ISSUING OFFICER; AND, SUBJECT TO CONDITIONS OF PART 4, TITLE 2, CHAPTER 2 OF THE CALIFORNIA PENAL CODE.

DATE OF ISSUE: April 13, 1984

EXPIRATION DATE: April 12, 1985
UNLESS REVOKED

NAME, TITLE, AND SIGNATURE OF ISSUING OFFICER

DAVID G. MILLER, Manager
Command, Communications
and Compliance Program

SS-8324

LICENSE TO SELL MACHINE GUNS
(PENAL CODE SECTION 12250)
STATE OF CALIFORNIA – DEPARTMENT OF JUSTICE
DIVISION OF LAW ENFORCEMENT
P. O. BOX 13417, SACRAMENTO, CALIFORNIA 95813

LICENSE NO. 58-R

CII NO. 4 031 431

NAME OF FIRM OR BUSINESS | ADDRESS

NAME OF LICENSEE | ADDRESS

LeRoy DEL DON, Jr. | 810 "E" Street, Patterson, California 95363

| DESCRIPTION: Hair | Eyes | Height | Weight | Place of Birth | Date of Birth |
|---|---|---|---|---|---|
| BRN | BLU | 6-00 | 175 | CALIFORNIA | 2-5-42 |

This license is issued to permit the sale of machine guns. It does not affect the power of local authorities to charge a fee or tax upon the business specified above. Additional conditions, if any:

NONE

THIS LICENSE IS: VALID FOR ONE YEAR FROM DATE OF ISSUE; NOT TRANSFERABLE; TO BE DISPLAYED ON THE SALES PREMISES; SUBJECT TO INSPECTION BY ANY PEACE OFFICER OR ANY OTHER PERSON DESIGNATED BY THE ISSUING OFFICER; AND, SUBJECT TO CONDITIONS OF PART 4, TITLE 2, CHAPTER 2 OF THE CALIFORNIA PENAL CODE.

DATE OF ISSUE: April 13, 1984

EXPIRATION DATE: April 12, 1985
UNLESS REVOKED

NAME, TITLE, AND SIGNATURE OF ISSUING OFFICER

DAVID G. MILLER, Manager
Command, Communications,
and Compliance Program

186

APPENDIX A

## Appendix B

### IV

Respondent's records of the Thompsons he owns, or has owned, disclose as follows:

| Transferor | Transferee | Model | Serial # | Date Transfer Approved |
|---|---|---|---|---|
| Tommy A. St. Charles | Respondent | 1928 A-I | 134149 | 8/26/71 |
| Law Enforcement Ordinance Co. (LEOC) | Respondent | 1928 Navy | 6326 | 4/23/74 |
| LEOC | Respondent | 1921 | 8680 | 5/23/75 |
| ·Respondent | LEOC | 1921 | 8680 | 6/19/75 ✓ |
| LEOC | Respondent | 1921 | 2768 | 5/29/75 |
| LEOC | Respondent | MI | 511977 | 5/29/75 |
| LEOC | Respondent | MI | 222430 | 1/19/77 |
| Sonora Police Dept. | Respondent | 1928 A-I | 270434 | 3/8/77 |
| Vacaville Police Dept. | Respondent | MIAI | 310348 | 1/10/78 |
| Santa Rosa Police Dept. | Respondent | 1928 Navy | 14694 | 1/18/80 |
| Respondent | Exeter Police Dept. | MIAI | 310348 | 10/29/86 ✓ (application for transfer) |

### V

While respondent has purchased, or taken in trade, nine Thompsons since 1971, he has returned one (1975), sold one (October 1986) and retained seven. There was no evidence of any police department currently using Thompsons. While they may have historic value and interest, they are not a weapon of choice.

### VI

While respondent claims the Thompsons are for sale, the items have been in inventory between six and fifteen years. Except for number 310348 sold within days of the hearing, none had been sold at all. The Thompsons, while available for sale, are not being possessed for sale. Whether the Thompsons are maintained as a personal collection or for showmanship, they are not needed for sales or demonstrations for sales of machine guns to law enforcement and good cause does not exist for their possession.

### VII

It may be appropriate to possess one Thompson or other early model machine gun to demonstrate changes or improvements in the weapons that may assist law enforcement agencies select weapons for purchase.

### DETERMINATION OF ISSUES

Cause exists, pursuant to Penal Code sections 12230 and 12233, to deny reissuance of respondent's permit to possess and/or transport and license to sell machine guns. *APPENDIX B*