[Civ. No. 28098. Fourth Dist., Div. One. Oct. 28, 1983.]

COUNTY OF SAN DIEGO et al., Plaintiffs and Respondents, v.
ASSESSMENT APPEALS BOARD NO. 2 OF SAN DIEGO COUNTY,
Defendant and Respondent;
CHARLES D. HERRING et al., Real Parties in Interest and Appellants.

COUNSEL

Herring & Stubel and Steven Williams for Real Parties in Interest and Appellants.

Lloyd M. Harmon, Jr., County Counsel, and Bruce W. Beach, Deputy County Counsel, for Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

OPINION

HANSCOM, J.*—The County of San Diego (the County) and E. C. Williams, assessor for the County, filed two separate petitions for writs of

*Assigned by the Chairperson of the Judicial Council.

administrative mandate. The petitions asked for issuance of a writ ordering Assessment Appeals Board No. 2 (the Board) of the County to set aside its decisions regarding reduction of the 1979 taxable values of certain properties within the La Vista Grande subdivision. After a hearing, the trial court issued a writ of mandate directing the Board to set aside its decisions regarding the 1979 taxable values of the properties in question. The writ also ordered the Board to reconsider the homeowners' applications for equalization of their 1979 property tax assessments in light of the court's decision. Monte N. Stewart, Charles D. and Delayne E. Herring, real parties in interest, file a consolidated appeal from the judgment granting the petition for the writ.

In 1979, Stewart and the Herrings, with other homeowners in the La Vista Grande subdivision, filed applications with the Board requesting equalization of their 1979 real property assessments. They contended the county assessor erred in computing their property assessments. The Board held hearings on the applications in January and February 1980. These proceedings involved presentation of testimony and evidence by various parties in interest, including Stewart, the Herrings and the County. Subsequently, the Board issued its oral and written determination that the applicants' properties were nonmarketable as of the 1979 lien date. The Board reduced the value of the land to one-sixth of its intrinsic market value and determined the value of the improvements to be zero. It cited the inadequate drainage system, resultant flooding, erosion and septic system failures among factors for its findings and conclusions.

On February 26, 1981, the County and the assessor filed two petitions for writs of administrative mandate under Code of Civil Procedure[1] section 1094.5. The petitions named the Board as respondent and Stewart (case No. 466459) and the Herrings (case No. 466460), along with other homeowners and Does I through X, as real parties in interest.

The superior court on November 4, 1981, heard case Nos. 466459 and 466460 with the Herrings appearing as real parties in interest. Stewart did not appear at that hearing.

The court in its conclusions of law found abuse of discretion is established if the Board's "decisions" are not supported by the findings or the findings are not supported by substantial evidence in light of the whole record. The court also found the Board's findings—that each property at issue was totally nonmarketable at lien date, that the value of the land was one-sixth of its intrinsic market value and that each improvement had a zero market value

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

for the taxable year 1979—were not supported by the evidence or testimony in light of the whole record.[2] The court held this to be prejudicial abuse of discretion.

The County's petition for the writ of administrative mandate was granted March 30, 1982. The Herrings and Stewart filed timely consolidated appeals from the judgment granting the petition for the writ.

On appeal, Stewart and the Herrings have four main contentions.

■ First, they allege the trial court had no jurisdiction to review the decision of an assessment appeals board with respect to an owner-occupied, single-family residence. As a basis for this contention, they state the Legislature has not given the superior courts jurisdiction to review such decisions.

While such authority may not have been specifically granted by the Legislature, the courts of California have addressed the issue. In *County of L.A.* v. *Tax Appeals Bd. No. 2* (1968) 267 Cal.App.2d 830 [73 Cal.Rptr. 469], the court rejected a contention the county could not bring an action against a tax appeals board without express statutory authority. The court stated, "it is clear that such review is provided in California by Code of Civil Procedure section 1094.5." (*Id.* at p. 833.) Without such a right of review, the county would have no adequate remedy at law (*County of Sacramento* v. *Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 673 [108 Cal.Rptr. 434]). Further, without administrative mandamus or similar methods of review, the county would have no available procedure to review tax appeal proceedings or to cause assessment appeals boards to conform to the law (*Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717, 721 [96 Cal.Rptr. 379]; *County of Sacramento* v. *Assessment Appeals Bd. No. 2, supra,* 267 Cal.App.2d at p. 673).[3]

■ Second, the Herrings and Stewart argue the County did not file its petitions for writs of administrative mandate within 90 days of the final

---

[2]Among its findings of fact, the court found: "In computing the taxable value of each property pursuant to Revenue and Taxation Code sections, respondent Assessment Appeals Board failed to determine the full cash value as of the lien date, taking into account reductions in value due to damage, destruction, depreciation, obsolescence or other factors causing the decline in value."

[3]The Herrings and Stewart contend because the burden of proof is on the assessor in single family appeals, as opposed to the property owner in commercial property appeals, this shows a legislative intent to insulate single family property owners from judicial review (see tit. 18, Cal. Admin. Code, § 321, subd. (b)). The Legislature would have to speak in a much more direct manner before this court could hold they intended this board action is not subject to review when every other administrative action is (§ 1094.5).

decision as required by section 1094.6, subdivision (b). They allege, as a result, the trial court had no jurisdiction over the matter.

Section 1094.6, subdivision (e), limits the application of section 1094.6 to adjudicatory administrative decisions "suspending, demoting or dismissing an officer or employee, revoking or denying an application for a permit or a license, or denying an application for any benefit or allowance." Section 1094.6, subdivision (g), goes on to make section 1094.6 applicable to "a local agency only if the governing board thereof adopts an ordinance or resolution making this section applicable." It has not been alleged or proven that such an ordinance or resolution has been adopted by the County. Section 1094.6 does not apply to this case.

The statute of limitations for ordinary civil actions applies where no other period of time is specified (§§ 1109, 363). Depending on the specific nature of the right asserted, a three or four-year period usually applies in similar mandamus proceedings (*County of Sacramento* v. *Assessment Appeals Bd. No. 2, supra,* 32 Cal.App.3d 654, 661-662). Even if a one-year statute applied, the County filed within the time limit.

■ The trial court's review of the Board's action is governed by the substantial evidence test and all parties agree to this. (See *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29].)

In order to properly apply the substantial evidence test, its current interpretation must be ascertained, as the scope and extent of the test has changed with time.[4]

The test now is that a court reviewing the evidentiary basis of an agency's decision must consider all relevant evidence in the administrative record including evidence that fairly detracts from the evidence supporting the agency's decision (*Universal Camera Corp.* v. *Labor Bd.* (1951) 340 U.S. 474, 488 [95 L.Ed. 456, 467, 71 S.Ct. 456]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242]). The trial court's and appellate court's functions in reviewing the evidentiary basis of the agency's decision are still identical regardless of whether the trial court upheld or

---

[4]In *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627 [83 Cal.Rptr. 208, 463 P.2d 432], the Supreme Court held the "isolation test" version of the substantial evidence rule was outmoded. That test called for isolating evidence supporting the agency's findings and disregarding conflicting relevant evidence in the record. The *LeVesque* court indicated the substantial evidence test required the trial court to review the entire record (*id.* at p. 637).

overturned the administrative action (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130 at p. 149).

Under the *Universal Camera* rule, however, both the trial and appellate courts have broader responsibility to consider all relevant evidence in the administrative record, both contradicted and uncontradicted (*Jasmine Vineyards, Inc.* v. *Agricultural Labor Relations Bd.* (1980) 113 Cal.App.3d 968, 975 [170 Cal.Rptr. 510]). This consideration involves some weighing of the evidence to fairly estimate its worth (*Universal Camera Corp., supra,* at p. 490 [95 L.Ed. at p. 468]). This broadening of the substantial evidence test allows the party aggrieved by an administrative action a greater chance to overturn the agency's action than under the formerly applied isolation rule.[5]

■ In general, substantial evidence has been defined in two ways: first, as evidence of " ' "ponderable legal significance . . . reasonable in nature, credible, and of solid value" ' " (*Ofsevit* v. *Trustees of Cal. State University & Colleges* (1978) 21 Cal.3d 763, 773, fn. 9 [148 Cal.Rptr. 1, 582 P.2d 88]); and second, as " 'relevant evidence that a reasonable mind might accept as adequate to support a conclusion' " (*Hosford* v. *State Personnel Bd.* (1977) 74 Cal.App.3d 302, 307 [141 Cal.Rptr. 354]).

■ A trial court which is reviewing the record of the assessment appeals board before it, however, must focus on two separate and distinct issues (*Hunt-Wesson Foods, Inc.* v. *County of Alameda* (1974) 41 Cal.App.3d 163, 177 [116 Cal.Rptr. 160]; *Westlake Farms, Inc.* v. *County of Kings* (1974) 39 Cal.App.3d 179, 183 [114 Cal.Rptr. 137]). In addition to examining whether the board's findings are supported by substantial evidence, the trial court must determine whether the board has committed any errors of law. "It has been held the method of valuation 'presents a legal issue, the judicial review of which is within the province of the trial court. . . .' " (*Hunt-Wesson Foods, Inc., supra,* at p. 178.)

■ In a conclusion of law, the trial court here held the Board failed to compute the taxable value of the property pursuant to Revenue and Taxation Code section 51. The court found that by not determining the full cash value as of the lien date, taking into account reductions in value due to damage, destruction, depreciation, obsolescence, or other factors causing the decline in value, the Board had not proceeded in the manner required by law. Under section 1094.5, subdivision (b), the court was then bound to find the board committed prejudicial abuse of discretion. Our review of the record reveals substantial evidence supports the trial court's conclusion.

---

[5] See California Administrative Mandamus (Cont.Ed.Bar 1966) sections 5.52-5.75, pages 64-91; (1982 Supp.) pages 57-87.

Every taxpayer is entitled to have his assessment "equalized." The assessment should be adjusted so that it is neither higher nor lower than other assessments in proportion to the value of the property assessed. The function of a tax appeals board is to equalize disputed assessments. Its duty is to make all assessments as fair and equal as practicable (*Hunt-Wesson Foods, Inc.* v. *County of Alameda, supra,* 41 Cal.App.3d 163, 168; *Flying Tiger Line, Inc.* v. *County of L. A.* (1958) 51 Cal.2d 314, 320 [333 P.2d 323], cert. den. 359 U.S. 1001 [3 L.Ed.2d 1031, 79 S.Ct. 1140]). However, the powers of an assessment appeals board in raising and lowering assessments are purely statutory. It must act in the manner prescribed by statute, otherwise its actions are void (*Birch* v. *Board of Supervisors* (1923) 191 Cal. 235, 237 [215 P. 903]).

The correct method for computing the taxable value of property as of lien date is established in Revenue and Taxation Code section 51.[6]

Revenue and Taxation Code section 51 provides that the taxable value of the property shall be the *lesser* of: (a) The base year value, which for each appellant is the purchase price of his or her property, compounded annually by a maximum inflation factor of 2 percent, or (b) the property's full cash or market value taking into account the reduction in value due to damage or other factors causing a decline in value, or (c) the sum of (a) or (b) above, computed for both land and improvement.

The above section requires the assessment appeals board determine not only the base year value or factored base year value of the property, but

---

[6]The complete text of section 51 of Revenue and Taxation Code is as follows: "For purposes of subdivision (b) of Section 2 of Article XIII A of the California Constitution, for each lien date after the lien date in which the base year value is determined pursuant to Section 110.1, the taxable value of real property shall be the lesser of:

"(a) Its base year value, compounded annually since the base year by an inflation factor, which shall be the percentage change in the cost of living, as defined in Section 2212; provided, that any percentage increase shall not exceed 2 percent of the prior year's value; or

"(b) Its full cash value, as defined in Section 110, as of the lien date, taking into account reductions in value due to damage, destruction, depreciation, obsolescence, or other factors causing a decline in value; or

"(c) If the property was damaged or destroyed by disaster, misfortune, or calamity, or removed by voluntary action by the taxpayer, the sum of (1) the lesser of its base year value of land determined under subdivision (a) or full cash value of land determined pursuant to subdivision (b), plus (2) the lesser of its base year value of improvements determined under subdivision (a) or the full cash value of improvements determined pursuant to subdivision (b), which shall then become the base year value until such property is restored, repaired, or reconstructed or other provisions of law require establishment of a new base year.

"For purposes of this section, 'real property' means that appraisal unit which persons in the market place commonly buy and sell as a unit, or which are normally valued separately.

"Nothing in this section shall be construed to require the assessor to make an annual reappraisal of all assessable property."

also its full cash value undepreciated for any damage. After the full cash value is determined, it is then reduced for damage or depreciation arriving at the depreciated cash value of the property. If the depreciated cash value is less than the base year value or the factored base year value, then it shall be the taxable value of the property. If the depreciated cash value is more than the base year value or in following years becomes more than the factored base year value, then the taxable value is the base year value or factored base year value. The Board failed to follow this procedure.

The assessor testified the undepreciated market value of the property based on comparables was $130,000 for Stewart and $125,000 for the Herrings, and the cost-to-cure the septic tank problem with connections to the sewer main and drainage problem would be $10,000.[7] This was composed of $6,500 to correct the sewer problems, $2,500 to connect the sewer and $1,000 to cure the flooding system. The depreciated value was $120,000 for Stewart and $115,000 for the Herrings. Since the base year value or enrolled value for Stewart was $106,000 and $102,888 for the Herrings, which was less than the full cash value taking into account the reduction in value, the assessor testified to the base year value or enrolled value as the taxable value of the property.

Although Stewart and the Herrings state their opinions on the market value of their property were based on the market approach to value, they offered no evidence of comparables or professional appraisals to assist in determining the market value of their properties. Mrs. Herring expressed her opinion the property was worthless because she did not think anyone would buy it. She also said it was uninhabitable, although she testified they had installed a pool for therapeutic use of her child even after the problems with the septic system were known. Stewart's opinion of value was it was worthless as unmarketable property. Neither Stewart nor the Herrings made any attempt to establish a market value taking into account the reduction in value due to damage. They made no attempts to definitively determine cost-to-cure factors causing the alleged decline in value. They continued to reside in their houses and based their opinions of no market value on the fact that none of the various homes offered for sale in the subdivision had sold.

■■ The trial court found the Board's findings regarding the value of the land and improvements were not supported by the evidence or testimony in the light of the whole record. The trial court correctly found this constituted prejudicial abuse of discretion. The Board erred in determining the

---

[7]Competent evidence of the cost to cure the sewer problems was provided by an official of the sewer district which served the area and was working on plans to provide sewers to the houses at these costs.

properties in issue were totally nonmarketable at lien date. ■ As stated in *Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, at pages 23 to 24 [127 Cal.Rptr. 154, 544 P.2d 1354]: "In reviewing this defendant's valuation method we begin with the proposition that no property may escape taxation because of the difficulty of determining its full cash value. '[T]he absence of an "actual market" for a particular type of property does not mean that it has no value or that it may escape from the constitutional mandate that "all property . . . shall be taxed in proportion to its value" . . . but only that the assessor must then use such pertinent factors as replacement costs and income analyses for determining "valuation." ' "

In conjunction with the erroneous conclusion the properties were "totally nonmarketable at lien date," the Board erred in determining the correct method of valuation to be the market value approach and then subsequently ignoring all competent evidence presented on market value, making its own determination of value based upon speculation and conjecture. When valuing property by comparable sales, the Board must follow the provisions set forth in Revenue and Taxation Code section 402.5. At the hearings, the Board chose to disregard competent evidence presented regarding comparable properties sales to assist in determining market value as well as costs to cure the damage or other factors causing a decline in value.

■ In addition, the Board's determination the value of the improvements on each of the properties was zero was not substantiated. The appellants continued to live in their houses, pay mortgages and negotiate with the developer to alleviate the faulty septic tank system by connecting with a sewer main. To say they had zero value was pure speculation. As stated in *Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d 717, at pages 723 to 724: "A study of the proceedings before the board show that although there was evidence that the permits and leases were valueless, despite declarations in the taxpayers' applications that the interests were of value, the board was not equalizing the values but was holding as a matter of law that the permits and leases were not taxable." The court then went on to hold: "Ordinarily, where the action of an administrative board, such as the board of supervisors, is based upon substantial evidence, the courts may not interfere with that action, and again, ordinarily, the sworn testimony of witnesses constitutes such substantial evidence. But the courts are not and should not be bound by an administrative finding of fact that is obviously a subterfuge for an erroneous finding of law, nor when the evidence on the face of it is clearly unbelievable. To say that the right to pasture cattle on government land, even though that right is revocable at the government's will and may be required to be exercised with other cattle owners, has no cash value is unbelievable."

Stewart and the Herrings failed to establish the value of their properties by any competent evidence. Instead, they argued the assessor's computations and methods were in error. ˙ Revenue and Taxation Code section 1610.8 requires the applicant for a reduction in an assessment to establish the full value of the property by *independent evidence*. Stewart and the Herrings never met the independent evidence requirement, but rather, attempted instead to refute the assessor's case. If the Board has before it evidence of two different value approaches but arrives at a figure supported by neither, the Board has "shirked its responsibility to both the taxpayer and the public by acting on speculation and conjecture" (*Madonna* v. *County of San Luis Obispo* (1974) 39 Cal.App.3d 57, 62 [113 Cal.Rptr. 916]).

The trial court had jurisdiction to review the entire record presented to the Board, and did so. Where the validity of the valuation method or specific valuation is challenged, the trial court is faced with a question of law (*Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra,* 16 Cal.3d 14, 23). Here, the trial court found abuse of discretion on this issue, which it had the power to do (*De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 564 [290 P.2d 544]). The trial court did not hold the Board must blindly adopt the assessor's opinion only that the Board's decision must be supported by substantial evidence. The trial court thus properly ordered the Board to set aside its decisions regarding the taxable value of the properties for 1979, and remanded the matter for reconsideration in the light of its decision (*De Luz Homes, Inc., supra,* at p. 574).

Judgment affirmed.

Cologne, Acting P. J., and Work, J., concurred.