[No. A042530. First Dist., Div. One. Mar. 23, 1990.]

RICHARD C. ZUNIGA, Plaintiff and Appellant, v.
COUNTY OF SAN MATEO DEPARTMENT OF HEALTH
SERVICES, Defendant and Respondent;
PENINSULA HUMANE SOCIETY, Real Party in Interest and
Respondent.

1522

**COUNSEL**

Judith A. Brecka for Plaintiff and Appellant.

Thomas F. Casey III, County Counsel, and Mary K. Raferty, Deputy County Counsel, for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

OPINION

RACANELLI, P. J.—

Richard C. Zuniga appeals from the denial of his petition for writ of mandate seeking release of six puppies being held by the real party in interest Peninsula Humane Society (Humane Society) pursuant to the direction of respondent San Mateo County.[1] We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 1, 1987, police searched appellant's residence pursuant to a warrant authorizing a search for American pit bull terriers, fighting dogs, guard dogs, and specifically described dogfighting paraphernalia. Among the items seized pursuant to the warrant were three adult American pit bull terriers. Multiple charges of illegal dogfighting were subsequently brought against appellant. (Pen. Code, § 597.5.) The seized dogs were housed at the Humane Society.

On July 31, 1987, one of the seized dogs gave birth to seven puppies at the Humane Society. Beginning on July 27, 1987, appellant made repeated verbal demands for release of the puppies. Appellant was told that the puppies were being held pursuant to Penal Code section 599aa and could not be released without a court order.[2]

On August 12, 1987, the San Mateo County Department of Animal Control Services wrote to the district attorney, indicating concern with the cost of caring for the animals pending trial and asking for a court order for "humane destruction" of all of the dogs "as soon as possible." The letter noted "possible behavioral problems with the puppies being raised in a prolonged kennel environment along with their generic [sic] propensities."

On October 8, 1987, appellant delivered a written demand to the Humane Society for release of the puppies.

---

[1] Respondent notes that the county itself is the proper party rather than the Department of Health Services designated in appellant's petition.

[2] Unless otherwise indicated, all statutory references are to the Penal Code. Section 599aa provides in relevant part that animals seized as a result of an arrest for illegal fighting of animals shall be retained "subject to the order of the court before which such person so complained against may be required to appear for trial." Furthermore, upon conviction, "all property so seized shall be adjudged by the court to be forfeited and shall thereupon be destroyed or otherwise disposed of as the court may order." It does not appear that the adult dogs were seized in connection with an arrest pursuant to section 599aa, but were seized pursuant to a search warrant. The puppies, being unborn, were not listed in the warrant.

On January 8, 1988, appellant applied to the municipal court where the criminal charges were pending for an order to return the puppies. In response, the district attorney stated that only the adult dogs would be used as evidence. On January 27, that court ordered return of the six remaining puppies.[3] Rather than release the puppies, the Humane Society served appellant with a notice of impoundment stating that the six-month-old puppies were believed to be dangerous. Pursuant to provisions of a county ordinance, appellant requested a postimpoundment hearing.

On February 4, 1988, an administrative hearing was held. On February 11, 1988, Hearing Officer George Nakamura determined that the puppies were "dangerous animals" pursuant to section 3330.0(j)(4) of San Mateo County Ordinance No. 03123, and ordered that appellant forfeit all rights of ownership and control of the puppies.

On March 16, 1988, appellant filed a petition for writ of mandate seeking review of the hearing officer's decision. On May 24, 1988, the superior court denied the petition. ■ ■ ■ ▬ ▬ ■ Appellant appeals from the resulting judgment.[4]

## DISCUSSION

Appellant argues that the county failed to follow the procedural requirements set out in the county animal control ordinance. He emphasizes that

---

[3] It appears that prior to October 1987, the puppies became ill and one died.

[4] At oral argument, we requested additional briefing on the issue whether the order for the destruction of the adult dogs divested appellant of his standing to bring the instant action for return of the puppies. We have concluded that it did not.

We recognize the general rule that in the absence of an agreement to the contrary, the offspring of domestic animals belong to the owner of the dam. (3A C.J.S., Animals, § 9, p. 480.) However, as we shall explain, the instant situation does not involve an agreement to transfer title, but an involuntary seizure governed by the provisions of the Penal Code. The adult dogs seized as evidence pursuant to a search warrant were retained subject to the order of the criminal court. (§ 1536.) These unborn puppies were neither listed in the search warrant, nor considered as fighting dogs in the criminal prosecution. They were not used as evidence in the criminal proceeding against appellant, and were properly ordered released to his custody by order of the municipal court on January 27, 1988. (§ 1540; *People* v. *Cavanna* (1989) 214 Cal.App.3d 1054, 1061 [263 Cal.Rptr. 177] [criminal court may order return of property seized but not used as evidence]; *Buker* v. *Superior Court* (1972) 25 Cal.App.3d 1085, 1089 [102 Cal.Rptr. 494].) No appeal was taken from that order establishing appellant's title, and it has become final. Thus, at the time the Humane Society issued its notice of impoundment, appellant had title to the puppies, and any subsequent determination regarding title to the adult dogs has no relevance.

We also conclude that appellant's subsequent assignment of his ownership rights to his attorney has no effect on the pending action. Code of Civil Procedure section 385 provides that an action does not abate by reason of such a transfer, and may continue to be prosecuted in the name of the original party. The foregoing determination disposes of respondent's claim that the case is moot.

failure to promptly give him notice of impoundment when the puppies were born has delayed his ability to obtain the return of the puppies and, presumably, maximized the possibility of behavioral problems due to being raised in a prolonged kennel environment. Appellant also argues that the puppies were not evidence in the criminal proceeding and that respondent's failure to hold a hearing until six months after the puppies' birth is an abuse of discretion and a denial of due process. He also challenges the decision of the hearing officer as unsupported by the evidence. In addition, he asserts the following challenges to the proceedings: vagueness of the section of the animal control ordinance providing for impoundment due to the "inherent nature of the animal"; the county's failure to preserve an audible tape of the hearing; the hearing officer's failure to state his reasons for the decision; the hearing officer's viewing of the puppies outside of the hearing; and the county's failure to allow appellant to apply for a dangerous animal permit pursuant to the terms of the county ordinance.

### San Mateo County Ordinance

San Mateo County Ordinance No. 03123 regulates animal control matters in the county. County animal control officers are authorized to impound any animal kept under conditions constituting a violation of the animal control ordinance, or when the officer has reasonable cause to believe the animal is dangerous. (San Mateo County Ord., § 3330.7.) Notice of impoundment must be given to the owner within 24 hours of impoundment. (San Mateo County Ord., § 3330.7.1.) Upon written request, a hearing must be held within 10 days of impoundment. (San Mateo County Ord., § 3330.7.2.) Following the hearing, the hearing officer "may rule that the owner or possessor of the animal will lose all rights of ownership and control of the animal; may order that the animal will be destroyed if the animal has bitten or injured a person or domestic animal; may declare an animal to be a Dangerous Animal as defined in this ordinance; and may require the owner or possessor before the animal is released to his custody to obtain a permit under Section 3330.6.1 and sign an agreement which contains conditions, . . ." (San Mateo County Ord., § 3330.7.2.)

A "Dangerous Animal," as defined in the ordinance, means an animal that "demonstrates any or all of the following behavior": attacks a person or other animal without provocation; runs at large and molests people; "creates a danger or constitutes a menace to the public's health and safety due to its training or the inherent nature of the animal"; or has scars or wounds attributable to fights. (San Mateo County Ord., § 3330.0(j).) It is a violation of the animal control ordinance to keep an animal *previously identified* as dangerous without applying for a dangerous animal permit.

(San Mateo County Ord., § 3330.6.) The ordinance provides for a hearing to contest the designation of an animal as dangerous. (San Mateo County Ord., § 3330.6(c).) The only sanction attached to a finding of dangerousness under section 3330.6 is that the owner must comply with the dangerous animal rules and regulations. (San Mateo County Ord., § 3330.6(c).) A dangerous animal permit may be denied to a person with a history of complaints regarding animal care and control violations. (San Mateo County Ord., § 3330.6.1(b).) Permits may be revoked upon conviction of an offense related to the care and keeping of animals. (San Mateo County Ord., § 3330.6.5(a)(1).) Following revocation of a permit, the owner has the choice of surrendering the animal to the county or removing it permanently from the county. (San Mateo County Ord., § 3330.6.5(d).) █ It is undisputed that appellant never had a dangerous animal permit.[5]

*Time of Notice of Impoundment*

Appellant contends that the puppies, since they had not been born at the time of the search, were not seized pursuant to the search warrant, and were not held as evidence in the criminal trial. He argues, therefore, that the puppies were impounded at birth, and the 24-hour notice mandated by section 3330.7.1 of the county ordinance was not timely served. He also argues that the ordinance allows the county to hold an impounded animal for only 10 days, and that the retention of his puppies for 6 months constitutes agency action in excess of its jurisdiction. (Code Civ. Proc., § 1094.5.)

Based on the facts contained in the record on appeal, it appears that the puppies were in the county's possession as a result of execution of the search warrant, as evidenced by the county's letter to the district attorney, and the fact that the puppies' dam was seized pursuant to the search warrant. The propriety of that seizure and of the subsequent detention are not before us. █ Appellant's remedy for an initial improper detention of the puppies is by way of motion in the criminal court for return of his property. (§ 1540; *Buker* v. *Superior Court, supra*, 25 Cal.App.3d 1085, 1089.) Appellant availed himself of that remedy. The criminal court's ultimate release of the puppies indicates that they were not considered evidence in the criminal

[5]Appellant argues that he should have been allowed to apply for a dangerous animal permit. In light of his subsequent dogfighting conviction, the grant of such a permit seems unlikely. Moreover, the county ordinance does not mandate such an opportunity, but merely provides it as an alternative disposition of a particular case. We find no abuse of discretion in the failure to allow appellant to apply for a permit under the facts of this case. We note, however, that the ordinance does not provide for destruction of the puppies as an available disposition in the absence of evidence that they have bitten or injured a person or domestic animal. (San Mateo County Ord., § 3330.7.2.)

matter. Appellant has not challenged the procedure for holding animals seized pursuant to a search warrant.

The Humane Society, apparently having been instructed to hold the animals pending criminal proceedings, had no power to release the dogs or the puppies absent a court order. (§§ 599aa, 1536.) Appellant requested and, ultimately, obtained the release of the puppies by the January 27 order of the municipal court. Respondent was not required to serve the 24-hour notice prior to that time.

*Failure to Make Findings*

 Appellant argues that he was denied due process of law by the hearing officer's failure to give reasons for his findings. Respondent does not dispute the requirement that an administrative agency must make findings (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12] [requirement is implicit in Code Civ. Proc., § 1094.5]) but notes, correctly, that the hearing officer did make a finding that the puppies were dangerous animals pursuant to a specified subdivision of the county ordinance. Findings need not be formal but should serve to inform a reviewing court as to the basis for depriving appellant of ownership rights. In light of the lack of complexity of the issues involved, we conclude that the finding of dangerousness made in the hearing officer's written opinion was sufficient to "bridge the analytic gap between the raw evidence and ultimate decision or order." (*Id.*, at p. 515.) We next discuss whether, pursuant to Code of Civil Procedure section 1094.5, the evidence supports the findings.[6]

*Evidence in Support of the Findings*

 We review the decision of the hearing officer in this case under the substantial evidence standard applicable to such matters. (Code Civ. Proc., § 1094.5, subd. (c); *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29] [substantial evidence standard used when no fundamental vested right involved].) Our function in reviewing agency action is identical with that of the superior court. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 149, fn. 22 [93 Cal.Rptr. 234,

---

[6] Code of Civil Procedure section 1094.5 provides for review of the decisions of administrative agencies. The scope of our review extends to whether the agency proceeded without or in excess of jurisdiction; whether there was a fair trial; and whether there was a prejudicial abuse of discretion. An abuse of discretion is established if the agency fails to proceed in the manner required by law, the findings are not supported by the evidence, or the decision is not supported by the findings.

481 P.2d 242].) Thus, we examine the entire record, considering both the evidence that supports the decision and the evidence against it. (*County of San Diego* v. *Assessment Appeals Bd. No. 2* (1983) 148 Cal.App.3d 548, 555 [195 Cal.Rptr. 895].)

■■■■ ■ The hearing officer found that the six-month-old puppies were "dangerous animals" under section 3330.0(j)(4) of the county ordinance.[7] Because the puppies have been confined in kennels under the control of respondent all their lives, the only applicable portion of the specified definition is that providing that an animal is dangerous if it "creates a danger or constitutes a menace to the public's health and safety due to . . . the inherent nature of the animal." Respondent focuses on the declaration of the hearing officer outlining the evidence he relied upon in reaching his decision, consisting essentially of the following: (1) the parents of the puppies were fighting dogs; (2) county employees, including a veterinarian, testified that the puppies were observed to have "dangerous propensities including extremely aggressive behavior requiring the puppies to be housed separately so they would not injure each other"; and (3) appellant was a known dogfighter, with criminal dogfighting charges pending.

■■■■ In addition, the hearing officer viewed videotapes of appellant at a dogfight and examined veterinary records indicating that the adult dogs seized from appellant's home had severe multiple lacerations.[8]

---

[7] Appellant objects to the lack of a recorded record of the hearing. The recorded tapes of the hearing were apparently inaudible except for small portions, and no transcript could be prepared. We note that respondent filed the declaration of the hearing officer in the superior court which stated the evidence relied upon in reaching the decision. Whether respondent is required to preserve a verbatim record of the hearing is not a settled issue. (*Bixby* v. *Pierno, supra*, 4 Cal.3d 130, 144 [reviewing court must review entire record]; Cal. Administrative Mandamus (Cont.Ed.Bar 1989) § 3.4, p. 73.) However, the parties to an administrative hearing may agree to reconstruct the record when a full record is not available. (*Chavez* v. *Civil Service Com.* (1978) 86 Cal.App.3d 324, 332 [150 Cal.Rptr. 197].) Appellant's only objections to the hearing officer's statements were to whether he notified appellant of his viewing of the puppies and to the hearing officer's explanation of the possible option of removing the dogs from the county. Although we express no opinion on the propriety of the hearing officer's belated statement of the evidence relied upon, we note that it is essentially undisputed. For that reason, we find that the statement may serve as a reconstructed record for purposes of review.

[8] Appellant contends that the hearing officer's ex parte observation of the puppies constituted improper confidential information. We note that the record submitted to the superior court indicates that appellant gave a telephone number to the hearing officer, and requested that he contact appellant to appear at the viewing. The hearing officer left a message to which appellant did not respond. Although appellant argued that the message had not been delivered, he identified no prejudice from the viewing. Appellant was allowed to submit a post-hearing brief. The hearing officer stated that his observation of the puppies was consistent with the testimony at the hearing. The evidence supports a determination that appellant had

██ The evidence received by the hearing officer relates mainly to appellant's actions and his mistreatment of the parent animal. The only evidence relevant to the puppies' "inherent nature" was the observed aggressive behavior toward each other while caged together and certain possible assumptions about their nature from the condition and use of their mother. The latter assumptions can be given only minimal weight, as the subjects of heredity and genetics are generally matters calling for the consideration of expert opinion. There was no evidence to demonstrate whether female dogs who are trained to fight are likely to give birth to dangerous puppies. As a matter of common knowledge, we would agree that wild animals or poisonous reptiles may possess an inherent nature that makes them dangerous to the public safety if not properly confined. However, we find no evidence to support a finding that the essential character or inherent nature of these (then) six-month-old puppies confined in kennels constitutes a threat to the public safety.[9]

Regarding the reported aggressive behavior, there is no indication that the puppies threatened human health and safety, as required under the ordinance definition. Nor was there evidence that the young puppies had ever harmed each other or engaged in unprovoked attacks on humans or other animals. The governing ordinance does not make aggressive behavior among caged puppies the criteria for a finding of dangerousness. Moreover, the unspecified aggressive behavior observed by the county staff fails to support a finding of an *inherently* dangerous nature, because in the absence of testimony regarding the cause of such behavior, it could be easily attributed to a number of factors including the fact of being caged.

Commentators have noted that a dog's propensity to bite results from a combination of many factors, including a genetic predisposition towards aggression, lack of early socialization with people, specific training to fight, the quality of care provided by the owner, and the behavior of the victim. (Lockwood, *Vicious-Dog Legislation —Controlling the Pit Bull*, 13 U. Dayton L.Rev. 267, 270, citing a 1987 study.) "Thus a dog whose genetic predisposition is to be aggressive may present little or no danger if the dog is

---

sufficient notice of, and an opportunity to respond to, the evidence obtained from viewing the puppies. (*English* v. *City of Long Beach* (1950) 35 Cal.2d 155, 158-159 [217 P.2d 22, 18 A.L.R.2d 547].)

[9] Appellant's contention that the words "inherent nature" are unclear is without merit. The dictionary defines "inherent" as "structural or involved in the constitution or essential character of something" and "belonging by nature or settled habit." (Webster's New Internat. Dict. Unabridged (3d ed. 1961) p. 1163.) We believe that the meaning of the words is commonly accepted. In the context of the ordinance, which defines a dangerous animal as a menace to public safety by reason of training or inherent nature, it is a sufficiently clear description which is susceptible to proof at a hearing.

well-trained and reasonably supervised, whereas an animal with little innate tendency to bite may become dangerous if improperly trained, socialized, supervised, treated, or provoked." (*Ibid.*; Note, *The New Breed of Municipal Dog Control Laws: Are They Constitutional?* (1984) 53 U. Cinn. L.Rev. 1067, 1077 [citing a survey showing that "pit bull" type dogs are not uniquely dangerous].)

There was no evidence presented at the hearing regarding the proposed future disposition of the puppies which would support a finding that any factors indicating a danger to the public would result. Absent expert evidence on the cause and nature of the puppies' perceived aggressive behavior which might fulfill the ordinance requirement of "inherent nature," or any indication of how the nature of the puppies adversely impacts public health or safety, the hearing officer's conclusion regarding an inherently dangerous nature is singularly speculative.

It is somewhat ironic that respondent, who controlled all but one of the above factors having some impact on the maturing puppies' nature, now seeks to declare them dangerous.[10] A more realistic assumption is that in order to discount its own contribution to the lack of socialization and training of the caged puppies, respondent, of necessity, must advance the theoretical argument that these puppies were congenitally "dangerous animals," a proposition for which no competent evidence was offered or received. Thus, we are compelled to agree with appellant that the finding of dangerousness is not supported by the evidence in the record.

We reverse the judgment and remand the action to the superior court with directions to issue a writ of mandamus requiring San Mateo County to vacate its decision of February 11, 1988, depriving appellant[11] of ownership rights of the puppies. We also direct the superior court to take such further action as may be appropriate consistent with the views expressed herein. The writ of supersedeas issued by this court on July 1, 1988, staying the destruction of the puppies, shall remain in effect until this opinion becomes final.

Newsom, J., concurred.

---

[10] Our decision does not, of course, require the return of the puppies to appellant, who has disputed neither the sad condition of the adult dogs nor the incriminating evidence of his participation in illegal dogfighting. The issue whether appellant could actually regain ownership of the puppies, though not before us, has apparently been determined by the terms of his probation preventing him from owning, training, or possessing dogs. Additionally, as earlier noted, counsel for appellant has informed us that all ownership rights to the puppies were assigned prior to the final determination in the criminal matter.

[11] As previously discussed, the actual beneficiary is appellant's assignee.

**STEIN, J.**—I respectfully dissent.

This is an appeal from the denial of a petition for a writ of mandate by which appellant sought the return of six American pit bull terriers. The majority opinion concludes that there is insufficient evidence to support the hearing officer's conclusion that these are "dangerous animals" within the definition of the San Mateo County animal control ordinance. While I disagree with that holding, I believe the trial court's decision should be upheld on the alternative grounds that appellant was properly denied ownership and control of these dogs. He therefore has no standing to contest the department of health services' further finding that they are dangerous animals. (See *People* v. *Kings Point Corp.* (1986) 188 Cal.App.3d 544, 549 [233 Cal.Rptr. 227].)

The ordinance provides that any animal kept under conditions constituting a violation of the animal control ordinance may be impounded. Following a hearing, the owner's rights to ownership and control of the animal may be lost. In addition, the animal may be declared to be dangerous. Thus, the hearing held in this case resulted in two independent findings: that these animals were dangerous; and, that appellant lost all rights of ownership and control of them. Appellant recognized the independence of these two findings in his petition for a writ of mandate where he stated, "The hearing officer found that petitioner would lose all rights of ownership and control of said animals. *Furthermore,* the hearing officer found the animals can be declared dangerous animals . . ." (Italics added.) If there is sufficient evidence to support either finding, the trial court's judgment must be affirmed. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266.)

The evidence in support of the hearing officer's finding that appellant should lose ownership and control of these animals was overwhelming. A police detective testified at the hearing that appellant was a known dogfighter against whom criminal charges were pending. A videotape reviewed by the hearing officer showed a dogfighting ring constructed inside appellant's garage. It also depicted appellant encouraging two dogs in that ring to fight. Appellant admitted that the animals he seeks to recover were bred from fighting stock. When seized, the mother had multiple, severe lacerations of recent origin and scars evidencing approximately 75 to 100 wounds all over her body. Although appellant has never possessed these animals since their birth, the evidence is sufficient to support the hearing officer's conclusion that he kept the dam, and therefore her puppies, in conditions violative of the animal control laws.

Since appellant has not established that the hearing officer abused his discretion when he ordered the loss of appellant's rights of ownership and control, I would affirm the judgment of the trial court denying a writ of mandate.

Appellant's assignment of rights in these animals cannot alter the validity of the trial court's judgment. Since appellant did not have possession of the animals when he "assigned" them, all he assigned was a potential cause of action for the conversion of personal property. The assignment of such a "chose in action" merely transfers the interest of the assignor. (Civ. Code, § 954.) Prior to the hearing to determine whether appellant should be deprived ownership and possession of these animals, he was accused of violating Penal Code section 597.5 (dogfighting). Those charges clearly jeopardized his rights to ownership and control of these animals under the ordinance. Indeed, before the hearing on his petition for a writ of mandate, appellant was convicted of these charges and, as a condition of his probation, prohibited from owning any dogs. Since the assignee "stands in the shoes" of the assignor and is subject to any judgment rendered against him, appellant's assignee has no greater rights to these animals than he does. (See Civ. Code, § 1459, Code Civ. Proc., §§ 338 and 385; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 948, p. 844.)

In sum, I would affirm the trial court on the grounds that neither appellant, nor his assignee, has an ownership interest in these animals. It therefore follows that they have no right to their possession and no standing to contest the department of health services' findings.

The ordinance defines a "dangerous animal" as one that demonstrates any of the following behavior: attacks another animal without provocation; or, creates a danger or constitutes a menace to the public's health and safety due to its training or the inherent nature of the animal. In the view of the majority, only the "inherent nature" test of the ordinance could be applicable here. I believe that the majority applies too limited a test and that the evidence is sufficient to sustain the hearing officer's finding that these animals are dangerous within the meaning of the ordinance either because of their demonstrated behavior or their training.

Appellant admitted that the animals had been bred from fighting stock, the dam had multiple, severe lacerations of recent origin, and evidence of approximately 75 to 100 wounds all over her body. The manager of animal shelter services, the manager of animal control services, and the shelter service's staff veterinarian observed these animals and testified that they "have dangerous propensities including extremely aggressive behavior

requiring the puppies to be housed separately so they would not injure each other." The hearing officer, who was the district supervisor of the office of environmental health, personally observed the animals. He "noted that their behavior was consistent with the testimony" of the two managers and the veterinarian. The evidence is therefore sufficient to support the hearing officer's finding that these animals are "dangerous" within the meaning of the ordinance, not only because of their inherent nature, but also due to their demonstrated behavior of attacking without provocation. (See *Northon v. Schultz* (1955) 130 Cal.App.2d 488, 490 [279 P.2d 103] [evidence that an excitable dog in the habit of jumping on people, which was kept in the basement as much as possible for that reason, dashed against the legs of appellant at the first opportunity is sufficient to support a finding that the dog had a trait which made him dangerous to the safety of others].) In addition, the evidence that these animals were raised in a humane society shelter, with little or no human socialization, would support the hearing officer's finding that they are dangerous within the meaning of the statute because of their training, or in this case, the lack thereof. (See *Talizin* v. *Oak Creek Riding Club* (1959) 176 Cal.App.2d 429, 434-435 [1 Cal.Rptr. 514, 80 A.L.R.2d 878] [failure to provide training to prevent a horse from jumping out of the show ring and into an area where spectators could be injured supported a finding that the horse had a vicious propensity].)

My fundamental disagreement with the majority, however, concerns their holding that the evidence does not support the finding that these animals are by their "inherent nature" dangerous. The majority rejects the assumption that, because of their breeding, these animals are a menace to public safety. The majority hold that the subjects of heredity and genetics require an expert's opinion. Any layman, upon encountering a six-month-old puppy he knew to have been bred from fighting stock—that exhibited "dangerous propensities including extremely aggressive behavior"—would immediately recognize that animal as a menace to his health and safety. I submit no expert's opinion is required (see *Miller* v. *Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 702 [106 Cal.Rptr. 1, 505 P.2d 193]); however, even if expert testimony were required, a doctor of veterinary medicine testified. The other witnesses were the manager of the Animal Shelter Service and the manager of Animal Control Services. We may assume from their positions that each had considerable experience with animals and that their background would be known to their departmental supervisor, who was the hearing officer in this case.

The finding that these animals are dangerous does not compel their destruction. They can be released to anyone with a "dangerous animal permit" who agrees with the humane society as to the conditions under which

they will be kept. Although this possibility may be remote, the public deserves at least this much protection from 6 three-year-old, aggressive and untrained dogs, of a breed recognized for its unusual strength and tenacity.