[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE' WHETHER ALLEGATION OF BREEDING AND SELLINGPIT BULL DOGS IN PREMISES CONSTITUTES A SERIOUS NUISANCE
The issue presented in this case is whether the plaintiff has stated a claim upon which relief can be granted by alleging that the defendants' breeding and sale of pit bull dogs in the apartment that the defendants lease from the plaintiff is sufficient to demonstrate a serious nuisance pursuant to General Statutes § 47a-15?
On July 28, 1995, the plaintiff, Kensington Square II Limited Partnership, through its attorney, served a notice to quit upon defendants Abigail Perez and Israel Lopez. The notice to quit alleged a violation of General Statutes § 47a-15; namely, engaging in conduct constituting a serious nuisance. The notice to quit terminated the lease and required the defendants to quit possession on or before August 6, 1995. The defendants remain in possession of the apartment.
The plaintiff brought this summary process action by a complaint which alleges that the defendants through the breeding and sale of pit bull dogs on the premises have engaged in conduct constituting a serious nuisance, as defined by Gen. Stat. Sec. 47a-15, since such conduct exposes other tenants and/or the landlord to immediate and serious danger.
The defendants have filed a Motion to Strike the complaint on the ground that, assuming the truth of the allegation that the defendants are engaged in the `breading and sale of pit bull dogs in the premises', such conduct as a matter of law does not constitute an immediate and serious danger to the safety of other tenants or the landlord. In a memorandum in opposition to the Motion to Strike, the plaintiff argues that the breeding and sale of pit bull dogs in the premises constititute a serious nuisance CT Page 11300-A under the law. Furthermore, the plaintiff claims that it should be allowed an opportunity to establish the factual allegations of the complaint.
The function of the motion to strike is to test the legal sufficiency of a pleading. RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 384, 650 A.2d 153 (1994). "In deciding upon a motion to strike or a demurrer, a trial court must take the facts to be those alleged in the complaint . . . and cannot be aided by the assumption of any facts not therein alleged." (Citation omitted; emphasis in the original.). Liljedahl Bros., Inc. v.Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990).
General Statutes § 47a-15 provides in pertinent part: "Prior to the commencement of a summary process action, . . . to evict based on . . . conduct by the tenant which constitutes a serious nuisance . . . , the landlord shall deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than thirty days after receipt of the notice. . . . For the purposes of this section, `serious nuisance' means (A) inflicting bodily harm upon another tenant or the landlord or threatening to inflict such harm with the present ability to effect the harm and under circumstances which would lead a reasonable person to believe that such threat will be carried out, (B) substantial and wilful destruction of part of the dwelling unit or premises, (C) conduct which presents an immediate and seriousdanger to the safety of other tenants or the landlord, or (D) using the premises for prostitution or the illegal sale of drugs." (Emphasis added.) This Court notes that the complaint does not contain an allegation that the pit bulls are behaving in any way harmful or threatening to the plaintiff or to any of its tenants. Thus, to fall within the definition of the "serious nuisance" defined by Sec.47a-15, the defendant's breeding and sale of pit bulls must constitute n conduct which presents an immediate and serious danger to the safety of other tenants or the landlord." Inasmuch as the Court has found no pertinent Connecticut law on the pit bull issue presented here, an examination of the law in other jurisdictions may be helpful.
I. Background CT Page 11300-B
In response to the problem of serious attacks on people by pit bull dogs, ". . . lawmakers in several cities and towns have enacted legislation requiring pit bull dog owners to observe special regulations. Comment, "The New Breed of Municipal Dog Control Laws: Are They Constitutional ?", 53 U. Cin. L. Rev. 1067 (1984) (hereinafter Comment, "The New Breed"). "The perception that pit bull dogs are dangerous is based upon the increasing number of reported attacks on people, the physical characteristics of the dog, and the historical use of the dogs as fighters." (Footnotes omitted.) Id. 1075-76. Although each city's law is different, one breed of dog has been singled out as inherentlydangerous to society." (Emphasis added.) Id., 1069.
According to one source, "[s]ince 1983, pit bulls have inflicted 21 of the nation's 29 fatal canine attacks. All five dog bite deaths reported for 1987 have involved pit bulldogs." "Pit Bulls — Dangerous or Misunderstood ?", 14 Current Mun. Probs. 497 (1988). "The pit bull population in America is less than onepercent of the total dog population in this country. Yet thatone percent accounted for over 70 percent of the canine-relateddeaths in the United States in the last four years." (Emphasis added.) Id., 501.
In a 1989 study published in the Journal of the American Medical Association (JAMA) concerning the number of people killed by dog bites in the United States from 1979 through 1988 and the breeds of dogs involved, pit bulls were responsible for 42 (41.6%) of 101 deaths where dog breed was reported, which was three times the rate for German shepards, the second most common breed involved. J. Sacks et al., "Dog Bite-Related Fatalities from 1979 through 1988", 262 JAMA 1489 (1989). Of the 157 dog-bite fatalities identified, 70% occurred among children who were less than 10 years of age. Id., 1490. Although the yearly number of dog-bite related fatalities changed little from 1979 through 1988, the proportion of fatal attacks involving pit bulls increased from 20% in 1979 and 1980 to 62% in 1987 and 1988. Id., 1490-91. Of the 41 attacks that involved pit bulls, 15 (36.6%) involved a stray, compared with 11 (18.6%) of 59 for other breeds. Id., 1491. Although the authors concede that breeds may be misclassified by news stories and the recent attention directed toward these dogs may lead to media overreporting of pit bull-related incidents relative to other species, "pit bulls CT Page 11300-C seemed to be involved in 42% of the fatalities." Id., 1492.
Opponents of the pit bull "say it is worse than all other dogs, and inherently dangerous." (Emphasis added.) "Killer Genes Ate My Dog," Economist, June 1, 1991, 83. While defenders of this breed may claim that in the hands of a sensible owner the pit-bull will cause no more trouble than any other breed, one author suggests that "[t]ere is good reason to doubt this." Id. "The pit-bull has been bred as a fighting dog. German shepards, Doberman pinschers and rottweilers are all bred to guard human masters, their livestock and their property. Pit-bulls are designed to kill other dogs. . . . [I]t is the unpleasantbehavior bred into the dogs that makes them particularly nasty."
(Emphasis added.) Id. According to one source, selective breeding of pit bulls has resulted in a breed which is much more easily aroused than most dogs, incredibly tenacious, insensitive to pain, and that attacks without warning. Id. While generally appropriate discipline will quickly cause "pups" to stop making trouble, "it is unlikely that this would work for the pit-bull, whose behavior deviates so much from the normal pattern of a dog's life." Id.
Owners of pit bulls defend their pets as a misunderstood breed. See V. Hearne, "Lo, Hear the Gentle Pit Bull!," Harper's, June 1985, 59. Among those who train dogs professionally, "pit bulls are generally recognized as an amiable, easy going lot. If pit bulls have a flaw in their relationship to people it is that they sometimes show a tendency toward reserve, a kind of aloofness that is a consequence of their being prone to love above all else reflection and meditation." Id., 61. While describing them as "gamely dogs," the author claims that the horror stories "tend to be told about just those breeds that are the best prospects for work with, say, the old, or those in wheelchairs." Id., 63. While the author praises pit bulls, she does not recommend them for everyone: "They do like to fight other dogs, and they are, as you must realize by now, a tremendous spiritual responsibility." Id., 67.
"While a deadly assault is tragic, it is undulyoppressive to classify pit bull dogs as uniquely dangerous. Many breeds are capable of and responsible for fatal attacks on people. A 1982 report found that sixteen different breeds were responsible for seventy-three fatal attacks on people.[1] Pit bull dogs were responsible for six fatalities, the same number as Great Danes.[2] Statistics on dog bites also demonstrate thatCT Page 11300-Dpit bull dogs are not uniquely dangerous. In the first ten months of 1983, the Cincinnati Health Department investigated 478 dog bites, involving thirty different breeds.[3] This investigation found that pit bull dogs were responsible for only about seven percent of the injuries to people.[4]" (Emphasis added.) Comment, "The New Breed," supra, 1077. "These statistics do not support the conclusion that pit bull dogs pose a greater threat to the community than any other breed. Therefore, regardless of the media attention focused on pit bull dog attacks, it appears that it is arbitrary to classify only onebreed as inherently vicious." (Emphasis added.) Id.
One author contends that we must "recognize the current problem of vicious dogs at its source: the individual dog's owner. Dogs are the products of their past and present masters. . . . One breed is not inherently good or evil, vicious ordocile, harmful or helpful. Individual dogs can be selectivelyin-bred and trained to be aggressive, and. currently, it appearsmany pit bull dogs are being abused in this way. . . . People determine whether dogs will be useful inhabitants of a community or nuisances. It is the people who breed and foster viciousness in dogs whom legislators also must control." (Emphasis added.) Id., 1081.
In support of an opposing view, others contend that the fact "[t]hat the pit bull is a clear threat to public safety can best be shown through an examination of the history, physical characteristics, and traits of the breed. . . . Historically, these animals were used in the `sport' of bull baiting. After bull baiting was outlawed, owners of these fierce and indefatigable dogs chose to make use of their dogs' die-hard tendencies in organized dogfights." S. Sullivan, "Banning the Pit Bull: Why Breed-Specific Legislation is Constitutional," 13 U. Dayton L. Rev. 279, 282 (1988).
"Despite the fact that dog fighting is outlawed in all fifty states, and classified as a felony in thirty-six, illegal dog fighting involving pit bulls continues today. The very reasons dogfighters choose pit bulls for this arena highlights the qualities of these dogs that make them unfit to live in residential communities. First, the pit bull possesses capabilities beyond those of other dogs. Biting with a force of1800 to 2000 pounds per square inch, twice the force of theaverage Doberman Pinscher or German Shepherd, pit bulls possess jaws so specialized that the jaws lock onto the object bitten. CT Page 11300-E Second, the pit bull has been selectively bred to fight withoutprovocation and to continue to fight until it is near death. The dogs' genetically-based insensitivity to pain also helps to explain why it is often very difficult to beat them off of their victims. Most frightening, pit bulls do not give any warningsignals before an attack, and they do not stop attacking even when their victim submits." (Emphasis added; footnotes omitted.) Id., 283-84.
"Defenders of the pit bull assert that the problem lies not with the breed, but with irresponsible owners. Owners have been known to cruelly mistreat their animals so that they excel either as savage fighters, as vicious sentinels over illegal or illegally-obtained goods, or as lethal weapons in the perpetration of crimes. Nevertheless, owners alone cannot beblamed for the vicious behaviors of this particular breed, sincecases have also been reported where the family pet pit bull hassuddenly turned on its owners. Hence, the regulation of the pit bull cannot simply be left to the discretion of the individual because the breed's behavior is too unpredictable." (Emphasis added; footnotes omitted.) Id., 284. "The keeping of pit bull dogs should be viewed as analogous to the keeping of wild animals such as lions and bears, and the state's power to regulate pit bulls should be similarly expansive. Not unlike the lion, the pit bull is an unpredictable and 'potentially dangerous animal, capable of doing harm, if loose, and even if attended . . . capable of doing harm to its owner or handler.'" Id., 287, quoting Warren v. Testa, 461 N.E.2d 1354, 1358 (Ohio C.P. 1983) (upholding prohibition on lions within city limits).
II. Case Law
In Zuniga v. San Mateo Dept. of Health Serv., 218 Cal.App.3d 1533,267 Cal.Rptr. 755. (Cal.App. 1 Dist. 1990), the court held that the findings by a hearing officer that the appellant's pit bull puppies were "dangerous animals" under a county ordinance, based on evidence that the parents of the puppies were fighting dogs, county employees testified that the puppies exhibited extremely aggressive behavior when caged together, and the owner was a known dog fighter, were insufficient where no expert evidence was presented on the cause an nature of the inherent dangerousness of the puppies.
"[W]e find no evidence that these [then] six-month-old puppies confined in kennels constitutes a threat to the public CT Page 11300-F safety." Id., 761. "Regarding the reported aggressive behavior, there is no indication that the puppies threatened human health and safety, as required under the ordinance definition. Nor was there evidence that the young puppies had ever harmed each other or engaged in unprovoked attacks on humans or other animals. The governing ordinance does not make aggressive behavior among caged puppies the criteria for a finding of dangerousness. Moreover, the unspecified behavior observed by the county staff fails to support a finding of inherently dangerous nature, because in the absence of testimony regarding the cause of such behavior, it could be easily attributed to a number of factors including the fact of being caged." Id.
"Commentators have noted that a dog's propensity to bite results from a combination of many factors, including a genetic predisposition towards aggression, lack of early socialization with people, specific training to fight, the quality of care provided by the owner, and the behavior of the victim. (Lockwood, Vicious-Dog Legislation-Controlling the Pit Bull, 13 Univ. Dayton L. Rev. 267, 270, citing a 1987 study.) `Thus a dog whose genetic predisposition is to be aggressive may present little or no danger if the dog is well-trained and reasonably supervised, whereas an animal with little innate tendency to bite may become dangerous if improperly trained, socialized, supervised, treated, or provoked.' (Ibid.; Note, The New Breed of Municipal Dog Control Laws: Are They Constitutional? (1984) 53 Cinn. L. Rev. 1067, 1077 [citing a survey showing `pit bull' type dogs are not uniquely dangerous].)." Id.
"There was no evidence presented at the hearing regarding the proposed future disposition of the puppies which would support a finding that any factors indicating a danger to the public would result. Absent expert evidence on the cause and nature of the puppies perceived aggressive behavior, which might fulfill the ordinance requirement of "inherent nature," or any indication of how the nature of the puppies adversely impacts public health or safety, the hearing officer's conclusionregarding an inherently dangerous nature is singularlyspeculative." (Emphasis added.) Id., 761-62.
Despite the above holding in Zuniga, numerous decisions have upheld strict regulations and even bans on pit bull dogs. In upholding a village ban on pit bulls in Garcia v. Village ofTijeras, 108 N.M. 116, 767 P.2d 355, 358 (N.M.App. 1988), cert. denied, 107 N.M. 785, 765 P.2d 758 (1988), the court stated that CT Page 11300-G "[t]he trial court's findings were to the effect that American Pit Bull Terriers presented a special danger to the health and safety of Village residents. The evidence supports this determination." (Emphasis added.).
"Village witnesses testified concerning a number of specific incidents involving pit bull attacks in the Village." Id., 358. "As a compliment to the testimony regarding specific incidents, the Village also presented evidence establishing thatthe American Pit Bull Terrier breed possess inherentcharacteristics of aggression, strength, viciousness andunpredictability not found in any other breeds of dog. The testimony indicates that American Pit Bull Terriers are frequently selected by dogfighters specifically because of their extraordinary fighting temperament. In a fight or attack, they are very aggressive and the most tenacious dog of any breed. They continue their attack until they are separated or their victim is destroyed. Unlike other breeds of dog that 'bite and slash' in an attack, pit bulls will `bite and hold,' thereby inflicting significantly more damage upon their victim." (Emphasis added.) Id., 359. "Testimony was also presented that pit bulls are especially dangerous due to theirunpredictability. . . . American Pit Bull Terriers have been known to be friendly and docile at one moment . . . and at the next moment attack in a frenzied rage. . . . There was testimony to the effect that such berserk frenzies do not occur in other breeds of dog. . . . There was further evidence to show that, in proportion to their population, more dog-bite incidents are caused by American Pit Bull Terriers than by other breeds." Id.
"Plaintiffs produced contrary evidence to the effect that environment and training are more important than genetics in determining the behavior of a dog. Many breeders, including plaintiff Amacker, breed American Pit Bull Terriers for the show ring, where aggressiveness towards humans would disqualify them. Evidence was presented concerning the history of this breed of dog that indicated it was not bred for aggressiveness towards humans. . . . Evidence was presented to establish that other breeds of dog are responsible for more of the total number of bite incidents every year than are American Pit Bull Terriers." Id., 360.
Notwithstanding the evidence presented by the plaintiffs, the court believed that the evidence amply supports the trial court's findings concerning the threat to the safety of the CT Page 11300-H resident of the Village presented by American Pit Bull Terriers." Id. In light of the "unusual prevalence of dogs of this breed in the Village, and of the evidence presented concerning theinherent characteristics of aggression, strength, andunpredictability of this breed," the court found that "the ordinance banning possession of American Pit Bull Terriers is reasonably related to protecting the health and safety of the residents of the Village." (Emphasis added.) Id. The court concluded that "the evidence adduced at trial supports the inference that a significant number of such dogs are dangerousdue to training and upbringing, as well as their inherentcharacteristics of aggression, strength, viciousness andunpredictability." (Emphasis added.) Id., 362.
Likewise, in Vanater v. Village of South Point,717 F. Sup. 1236, 1243 (S.D.Ohio 1989), the court found that the "evidence indicates that Pit Bulls possess the inherentcharacteristics of exceptional aggression, athleticism, strength,viciousness and unpredictability which are unique to the breed;
they possess an extraordinary fighting temperament and have been shown to be the most tenacious dog of any breed; they have a history of unpredictability and instantaneously attacking in a berserk and frenzied rage and have the ability to inflict significant damage upon their victims." (Emphasis added.). The court found that the "unquantifiable, unpredictable aggressiveness and gameness of Pit Bulls make them uniquelydangerous;" id., 1240; and that the ordinance was a reasonable response to the "special threat" that the pit bull breed presented "based upon their phenotypical characteristics and thetraits which have been bred into the breed." (Emphasis added.) Id., 1246.
Finally, in Hearn v. City of Overland Park, 244 Kan. 638,772 P.2d 758, 765, cert. denied 493 U.S. 976, 110 S.Ct. 500
(1989), the "[d]efendant city introduced expert testimony that pit bull dogs are both more aggressive and destructive than other dogs. Pit bull dogs possess a strongly developed `kill instinct' not shared by other breeds of dogs. This testimony indicated that pit bull dogs are unique in their `savageness and unpredictability.' Research indicates that pit bull dogs are twice as likely to cause multiple injuries as other breeds of dogs."
"Moreover, the injuries inflicted by pit bull dogs are far worse that [sic] those inflicted by other breeds. One CT Page 11300-I witness, testifying as an expert on trauma injuries, testified that pit bull dog attacks inflicted injuries much more horrificthan those in other dog attacks and were comparable. In hisexperience, only to those injuries inflicted in attacks by lions.
The district court was also presented with a survey of 278 dog attacks indicating that a majority (54.1%) represented attacks by pit bull dogs. Of the 32 known human deaths in the United States due to dog attacks since July 1983, 23 were caused by attacks by pit bull dogs." (Emphasis added.) Id. The court concluded that "[t]he unique public health hazard created by the presence of pit bulls within the community justifies the city's attempt to regulate this breed of dog." Id.
It has been found that pit bull dogs have been bred to and do "possess inherent characteristics of aggression, strength, viciousness and unpredictability not found in any other breeds of dog." See Garcia v. Village of Tijeras, supra, 767 P.2d 359. At the sane time, "a dogs predisposition to bite results from a combination of many factors, including a genetic predisposition towards aggression, lack or early socialization with people, specific training to fight, the quality of care provided by the owner, and the behavior of the victim." zuniga v. San Mateo Dept. ofHealth Serv., supra, 267 Cal.Rptr. 761.
This Court finds that the literature and scientific findings relative to the pit bull dog are insufficient for a judicial finding that the defendants' pit bull dogs are per se an immediate and serious threat to the plaintiff or to any of its other tenants. Given the absence of such a finding, and the absence in the complaint of an allegation of menacing behavior by the animals, the Court finds that granting the Motion to Strike would be appropriate.
Accordingly, the Motion to Strike is granted.
Clarance J. Jones, Judge